THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
V. JOHN CHANEY.

No. 15,378.     (94 Pac. 126.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Declarations as to Existing Pain—Prerequisite to Admissibility.* Before the declaration of a party with regard to a present and existing pain or suffering is admitted in evidence to a jury for the purpose of proving that an injury received by the party some time prior was continuing or permanent, sufficient evidence of the appearance or conduct of the party or of the particular circumstances under which the statements were made should be produced to make it at least probable to the court that the statements were the natural and spontaneous expression of present feeling and not the result of a deliberate purpose.

2. —— *Discretion of the Court.* No definite rule, applicable to all cases, can be laid down as to the amount or character of preliminary evidence requisite in such cases, but a wide latitude of discretion rests in the trial court.

3. —— *Rule in a Former Case Modified.* The rule prescribed in *A. T. & S. F. Rld. Co. v. Johns*, 36 Kan. 769, 14 Pac. 237, 59 Am. Rep. 609, is modified.

Error from Bourbon district court; WALTER L. SIMONS, judge. Opinion filed February 8, 1908. Reversed.

STATEMENT.

THE uncontroverted facts in this case are that on the 3d day of May, 1905, Chaney was in the employ of the railroad company, and while assisting to turn an engine and tender upon a turntable, which was within the

line of his duty, a lump of coal, quite large, fell from the tender several feet and struck him upon the head, inflicting, at least, a scalp wound three or four inches long; that after the blood had been washed from his head and face he walked to the office of the company's surgeon and had the wound dressed. Thereafter he received no further professional treatment from any surgeon or physician on account of such injury.

On the 6th day of July following he filed his petition in the district court of Bourbon county to recover damages against the company for negligence in inflicting the injury described, and alleged that his skull was fractured by the blow upon his head and a concussion of his brain was caused thereby; that by reason thereof he had suffered great pain, and was disfigured on the forehead and top of his head by a large cut and scar thereon some three inches in length; that ever since such injuries were received and by reason thereof he had suffered pain in his head and his left ear ached almost continuously, and that the injuries were permanent; that from the time of the injury to the bringing of the action he had been unable to labor except about nine days.

On the trial he recovered a judgment for $400. The railroad company brings the case here for review.

*L. F. Parker, W. F. Evans,* and *H. C. Sluss,* for plaintiff in error.

*J. L. Caldwell, A. M. Keene,* and *E. C. Gates,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The principal question presented, and the only one we deem necessary to discuss, is whether certain evidence introduced on the part of Chaney was properly admitted over the objection of the railroad company. William Webb, called as a witness for the plaintiff, testified in full as follows:

"Ques. Are you acquainted with John Chaney, the plaintiff? Ans. Yes, sir.

"Q. Did he at any time after his injury make any statement to you as to present existing pain in his head or ear? A. Yes, sir.

"Q. When? [Defendant objects: incompetent, has no bearing on the issues of this case, and calling for self-serving statements. Objection overruled. Defendant excepts.] A. Why, about a month and a half after he was hurt.

"Q. Well, more than once? A. Yes, sir.

"Q. When were the other times? [Objected to for reasons above stated. Objection overruled. Defendant excepts.] A. Well, several times. I could not mention them all.

"Q. About what time? Over what period of time? A. Well, about a week afterward, I reckon.

"Q. A week after the first time, you mean? A. Yes, sir.

"Q. Do you remember more than twice? A. Well, he has complained about his head every time he was over to my house.

"Q. How often? A. Well, I just could not say how often. A good many times.

"Q. Now what did he say about present existing pain in his head or ear? [Defendant objects for reasons above stated. Objection overruled. Defendant excepts.] A. Well, he says 'my head hurts me. My ear aches.' [Defendant moves to strike out the testimony of this witness for the reason it is incompetent and self-serving statements made by the plaintiff. Motion overruled. Defendant excepts.]"

Frank White, called as a witness for the plaintiff, testified in full as follows:

"Ques. Where do you live? Ans. Mulberry avenue, in the bottom.

"Q. In East Fort Scott? A. Yes, sir.

"Q. How long have you lived here? A. About twenty-five years.

"Q. Do you know John Chaney? A. Yes, sir.

"Q. Has he been to your house? A. Yes, sir.

"Q. Have you ever heard him make any statements as to present existing pain since his injury? A. Yes, sir.

"Q. How often? A. Well, three or four times.

"Q. When? A. Well, about a month after he got hurt.

Railroad Co. v. Chaney.

"Q. Well, then, when was the next time? A. A week ago.

"Q. When other times? A. Well, about two weeks before that.

"Q. The first time you remember was about a month or so after he got hurt? A. Yes, sir.

"Q. When was the next time after that, if you remember? A. Well, he worked for me, you know, once in a while, and he would say his head hurt, or his ear, something that way.

"Q. And he put his hand up to his head? A. Yes, sir.

"Q.. That was a month or two after he got hurt? A. Yes, sir.

"Q. What did he say at these different times about his head or ear hurting him? [Defendant objects: calls for self-serving statements and incompetent. Objection overruled. Defendant excepts. Defendant moves that the testimony be stricken out as to what plaintiff said, for the reason that it is self-serving. Motion overruled. Defendant excepts.] A. Well, he said his head and ear hurt him.

"Q. How often have you heard him say that? A. Well, three or four times.

*Cross-examination.*

"Ques. When was the last time you heard him say it? Ans. Last week.

"Q. That is since this suit was brought. When was it before that you heard him say anything about it? A. I can't remember just exactly.

"Q. How long before? Was it six months since you heard him say anything about it? A. Something like that. He worked for me.

"Q. How long before that had you heard him say anything about it? A. I could not say exactly the time. I have heard him say it three or four times. Maybe a little more.

"Q. When was the last time before last week? A. About a week before that.

"Q. That was when his case was about to be called here in court? A. Since that and before that, too.

"Q. That is twice? A. I knew nothing about that —about his case before that.

"Q. When you heard his case was about to be called you heard him say something about it? A. Yes, sir; and before that, too.

Railroad Co. v. Chaney.

"Q. How long before that had you heard him say something about it? A. Well, about a month after he was hurt.

"Q. After he was hurt? A. Yes, sir.

"Q. Then he went back to work after that? A. I know nothing about him working back there.

"Q. When was the next time you heard him say anything about it? A. About two weeks after that.

"Q. That makes four times, does n't it? A. Yes, sir.

"Q. The first time was about a month after he was hurt? A. Yes, sir.

"Q. And the next time about two weeks after that; then you heard him say something about it last week, and something about it the week before that; is that right? A. I could not say exactly how many times. I heard him several times, I told you.

"Q. You said three or four times? A. Yes, sir.

"Q. How often do you see him? A. I see him every day.

*Redirect examination.*

"Ques. You have heard him say so a good many times, too, have n't you? [Defendant objects: leading and suggestive. Objection sustained.]

"Q. You are only able to fix three or four times specially? [Same objection. Sustained.]

"Q. I will ask you if you remember the time when he was sawing some wood down there? A. Yes, sir.

"Q. When was that? A. That was last week.

"Q. That was last week; he was trying to do some work then? A. Yes, sir. He said 'I will have to quit.'

"Q. Do you remember some five or six months ago when he was down there helping you get a boat out of the creek? A. Yes, sir.

"Q. Do you remember what he said then about his head hurting him? [Defendant objects: incompetent and calling for self-serving statements. Overruled. Defendant excepts.] A. Yes, sir.

"Q. What did he say then about his head or ear hurting him? A. Why, I did not get the boat up. He got so bad off, his head hurt him so he could not get the boat up.

"Q. Hurt him so that he could not help you? A. We got it about half way out.

*Recross examination.*

"Ques. When was that. Ans. That was about a month and a half ago, something like that.

"Q. That is since this suit was brought? A. Yes, sir.

*Redirect examination.*

"Ques. The suit did not cure his head, did it? Ans. No, sir."

It will be observed that neither of these witnesses testified to any facts as occurring at any of the times any of the statements as to pain were made; that no act accompanied the statements (except in one instance Chaney put his hand to his head) which could be said to make the statement a verbal act or the verbal part of an act. Nor were the declarations testified to made in the form of exclamations of pain or as apparently involuntary manifestations of pain. Nor does the evidence indicate anything from which the court or jury could infer that the statements were not made with deliberation and for the possible purpose of strengthening the evidence in a contemplated lawsuit. Yet all these statements related to present and existing pain and suffering. They were bald statements of facts, and, as related by witnesses, were of course simply hearsay as to facts of which the witnesses had no knowledge. All evidence of this character is, however, necessarily hearsay, and many conflicting decisions have been made and many fine distinctions drawn as to when such statements of pain and suffering should be admitted or excluded.

The reason usually assigned for making an exception of this class of evidence and admitting the hearsay statements is that of necessity—to avoid the miscarriage of justice. The exception originated under the common law, at a time when the injured party was incompetent to testify in his own behalf. Since the removal of that obstacle the exception has survived for the reason that no witness other than the sufferer can testify of his own knowledge as to the injured party's suffering or as to his state of mind. Other witnesses than the injured party can testify only as to facts which

indicate the suffering or mental condition, and the statements made by the supposed sufferer, in connection with facts testified to, are admitted on the theory that they are verbal acts or verbal parts of the acts, especially when the statements are entirely disassociated from the cause of the suffering. The necessity of allowing exceptions to the rule of hearsay testimony is apparent when we consider how much more vividly the condition of a sufferer may be brought before a court and jury by the narration by another of all the circumstances surrounding the alleged sufferer—the observable indications of suffering, the screams, exclamations or even statements made by the sufferer—than could possibly be portrayed by the sufferer himself after he had recovered therefrom.

On the other hand, caution must be exercised to guard against the miscarriage of justice by giving credence to manufactured evidence of this kind. It is usually the province of the jury to determine what, if any, weight should be given to evidence of this character in a particular case, and some courts have said that the party offering the evidence should offer proof, by circumstances or otherwise, to show that the statements were exclamations made involuntarily or that sprung unconsciously from present pain or suffering, or, at least, that they were not made designedly. When such evidence is offered it should appear fair upon its face to the court before being submitted to the consideration of the jury, who, as before said, are the final arbiters as to its value.

We have examined numerous authorities but have found no case where statements of existing pain, stripped so completely as in this case of the circumstances under which they were made, have been admitted. Yet it must be conceded that in *A. T. & S. F. Rld. Co. v. Johns*, 36 Kan. 769, 14 Pac. 237, 59 Am. Rep. 609, the rule stated in the syllabus as to such declarations fully justified the court in admitting the evidence of these witnesses. It is also true that the de-

Railroad Co. v. Chaney.

cision in the Johns case has been cited with approval in at least three subsequent cases in this court, but neither in the Johns case nor in any of the subsequent cases was evidence offered and admitted of so bald a character as is presented here.

The question for determination in the Johns case was as to the admissibility of such evidence relating to present existing pain and suffering as distinguished from a historical recital of past suffering and pain. We have no criticism of the decision in that case as applied to the facts then under consideration, but as applied to the facts in this case, and to many other cases which may arise, the rule prescribed in the syllabus therein is too broad. The purpose of introducing the hearsay statements in evidence in this case could have been no other than to prove that an injury, received some time prior, was continuous or permanent, and no evidence was offered by either of the witnesses testifying in reference thereto of the appearance or conduct of the party, or of any other circumstances surrounding the making of the statements which indicate that they were the spontaneous expression of present feeling and were not made in furtherance of a deliberate purpose. Evidence of this character is admitted, as before stated, as a matter of necessity, that justice may not fail, but before such evidence is submitted to a jury there should be sufficient preliminary evidence to make it at least probable to the court that it will subserve, and not itself defeat, the ends of justice.

The only other error urged was the refusal of an instruction which was probably applicable to an affiadvit by the plaintiff in regard to his injury, made at a time, as he testified on the trial, when he did not understand or comprehend the gravity of the injury. The instruction made no reference to the subsequent explanation and was properly refused.

For the error in the admission of evidence the judgment is reversed and a new trial awarded.