No. 26,277.

FRANK KELSEY, *Appellee*, v. ARMOUR & COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT—*Accidental Injury—Total Disability—Sufficiency of Evidence.* Plaintiff sued for compensation for injury to his knee occasioned by striking it against a hard substance. His proof of relation of injury to disability consisted of expert testimony, based on an hypothetical question, that he was suffering from synovitis caused by traumatism. The hypothetical question did not include the condition disclosed by X-ray plates made for plaintiff one month after the accident. The plates were introduced in evidence by defendant, and showed bone growths in the knee joint of slow formation, resulting from organic processes and not from traumatism. According to testimony not rebutted, the disability was caused by the bone growths. *Held,* plaintiff's expert testimony was based on an hypothesis which ignored authentic evidence indispensable to a conclusion of value in determining cause of disability, and was insufficient to sustain a verdict in his favor for permanent disability.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed December 5, 1925. Remanded for further proceedings.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *A. B. Reid,* of Chicago, Ill., for the appellant.

*Elmer E. Martin,* of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one by Kelsey, to recover compensation for accidental injury sustained in the course of his employment in the glue department of Armour & Company. Plaintiff prevailed, and defendant appeals.

There was evidence sufficient to warrant a finding that on the night of April 25, 1924, plaintiff fell and struck his right knee on a glue trough, and sustained an injury which immediately gave him great pain and caused him some disability. To establish the rela-

---

Workmen's Compensation Acts, C. J. § 139; 20 A. L. R. 72.

tion of this injury to the permanent disability for which he recovered, plaintiff offered the professional opinions of two physicians. Doctor Coffin examined plaintiff about July 1, 1924. The following question was propounded to him:

"Now, doctor, let us assume that Kelsey had had some rheumatic condition in his body, and in the other knee than the one that you examined; that is, that his rheumatism had affected the other knee more than the one that you had examined. Let us assume that, for a period of thirty days prior to April 25, 1924, Mr. Kelsey had suffered no pain and no difficulty at all with either knee joint, or with any other part of his body, as far as rheumatism was concerned. Let us assume that, on the evening of April 25, 1924, he was able to engage in a scuffle and wrestle with his son, without feeling any pain or discomfort or any effect from such scuffling. Let us assume that, after that scuffle, he walked away and took the car and went to work at Armour & Company, leaving home about 9:15, and arriving at Armour & Company and going to work at 10:30 at night, and that he worked until 11:30, feeling vigorous and strong, and experiencing no pain of any kind; and let us assume that, about 11:30, while walking on a false floor or runway of some kind, he slipped off of the runway and struck the inside of the knee joint a violent blow on a sharp point of iron, or hard substance of some kind, and immediately upon sustaining that accident he felt an excruciating pain there, to the extent that he was compelled to sit down and was not able to rise, and it pained him severely during the rest of the night, and he was only able to hobble about to other activities during the night on account of that pain in the night, and this being Friday night, on Saturday he was confined to his home and suffered excruciating pain, and since that time has been compelled to use crutches, suffering pain in that knee; would you say, doctor, from this account, and from the examination you made of the knee, that the injury was a factor in causing the disability from which you found him suffering?"

The question was not answered as asked. The doctor felt it necessary to introduce other facts, and said:

"I think the injury had a bearing on the condition. This man is syphilitic. He shows a four plus Wassermann test. I believe that there was a condition existed in this man prior to the time of injury, but I believe that the injury increased or set up a condition there to produce what is called a synovitis."

The hypothetical question was objected to on the ground it did not fairly represent the facts in evidence, and it did not do so. Plaintiff was sixty-one years old. He had suffered from rheumatism since 1911 or 1912. In 1917 his physician sent him to a hospital, where he remained in bed four days, receiving the treatment given there for rheumatism. In 1918 or 1919 he suffered a serious attack of influenza, which disabled him for five weeks. On January 30, 1924, he consulted a chiropractor, who treated him for rheumatism throughout February and March before he was injured, and he did

not work at all during those months on account of rheumatism. All this was important in determining cause of disability.

Doctor Faust examined plaintiff about the middle of September, 1924. He said he found the right knee much larger than the left, both in bone and capsule. The hypothetical question, amended to include treatment for rheumatism as late as February and March, was propounded to him, and the answer follows:

"My opinion is that the injury which you described has been the cause of the disability in the right knee, superimposed upon an old arthritic condition of the bone."

On cross-examination the doctor said the Wassermann test did not affect his opinion. He took into consideration the fact plaintiff was feeling well before the accident, and predicated his opinion on the fact plaintiff scuffled, yet felt no disability, received the injury, and then felt his disability. The doctor said he believed plaintiff had synovitis of the knee, on top of an old arthritis, synovitis being an inflammation of the structures lining the joint, the synovial membrane which secretes a lubricant for the joint. The doctor did not define arthritis. It was defined later, and there is no dispute that it is an inflammation of the synovial elements of a joint, and is synonymous with rheumatism in a joint.

The foregoing is plaintiff's proof of the cause of disability. The difficulty with it is, he suppressed a factor which devitalized his expert testimony. After he was injured, plaintiff again consulted the chiropractor. The chiropractor understood that an X-ray examination was necessary to proper diagnosis after the injury and, on his recommendation, Doctor Allen, the X-ray specialist of Kansas City, made two plates, which disclosed the true condition of plaintiff's knee. These plates were made on May 26, and perhaps two days later were taken by plaintiff, or plaintiff's wife, to the chiropractor. The plates were in plaintiff's possession at his home as late as June 26, when he was examined by Doctor Gates, for defendant.

The X-ray plates were produced at the trial by defendant. Doctor Allen identified them, told how they were made, and interpreted them. The space between the femur and tibia was reduced by a hypertrophy, or projection, evidenced by increase in density, and some irregularity of the condyle of the femur and proliferation of the tibia. This caused the patella to ride higher than normal. An irregularity in the outline of the fibula was disclosed by a sharp edge, or exostosis. There was periosteal proliferation on the outside

of the tibia just below the joint. The hypertrophic changes were the result of the laying down of new bone by precipitation of bone salts in irregular spicules. The diagnosis was chronic hypertrophic arthritis. Doctor Allen's qualification, the integrity of his work and of the plates, and his interpretation of the plates, were not questioned.

The court appointed three physicians, Doctors Krall, Campbell, and Huber, to examine plaintiff, and they did so the day before they were called to testify. Their testimony showed plaintiff's physical condition to be as follows: He was five feet six inches in height, and weighed 185 pounds; left eye missing; the eye he has reacts to light and accommodation; teeth absent (plaintiff testified they were removed about 1921, on advice of his physician); tonsils in place, but submerged; most of the body covered with a dry, scaly eczema; some scars, the result of abscesses; a trace of hypertrophy of the heart; blood pressure 169, indicating tension of the arteries; pulse 110, too rapid; urinary analysis, some albumen and some casts, indicating a form of Bright's disease, and possibly chronic nephritis; blood analysis, 4 plus Wassermann, indicating syphilis, active stage; legs, about the same; slight tenderness of the inner margin of the right knee, and some limitation of motion of the right knee in extension. Plaintiff walked with crutches, complained of pain in the right knee, and gave a history of injury, and of chronic recurrence of rheumatism.

The opinion of the members of the commission, based on their examination of plaintiff and on the disclosure made by the X-ray plates, was that plaintiff's present disability was caused by the bone growth in his knee. It was agreed that plaintiff suffered some disability as the result of the injury, and that the injury might have speeded up a fresh attack of rheumatism (plaintiff said sometimes he was free, and then he would have relapses); but that the injury had nothing to do with plaintiff's condition when they examined him. On cross-examination, the substance of plaintiff's hypothetical question, shifted however to the right knee, was put, and the answers were that, assuming the facts to be as stated, the injury had something to do with plaintiff's disability. When on redirect examination the hypothetical question was supplemented by the omitted material facts, including the X-ray plates, the answers were that the injury was a coincidence, and not cause. Cross-examination took the usual course—doctors may be mistaken, members of

Kelsey v. Armour & Co.

the commission might be mistaken, this and that were possible and not possible, and this and that may have happened; but the professional opinion of the doctors was that the condition disclosed by the X-ray plates was chronic, and required a long time to develop; that it would be unreasonable to regard the hypertrophic changes as occurring between April 25 and May 26; and that the accident was not in any way associated with the condition in which they found plaintiff at the time of the trial.

The result of the foregoing is that plaintiff's expert testimony was based on an hypothesis which ignored authentic evidence indispensable to a conclusion of value in determining cause of disability. Leave out the actual condition disclosed by the X-ray plates, and plaintiff's disability might be attributable to synovitis caused by traumatism. Put in the actual condition disclosed by the X-ray plates, and the disability is attributable to bone growth in the joint, which results from processes within the body itself and not from external force. With the testimony of plaintiff's expert witnesses diverted from the issue, there was no evidence to sustain a verdict for plaintiff for permanent disability.

Plaintiff sued as a well man who had been totally disabled by a blow on the knee, and he tried to give his case that kind of a cast, by his testimony. He went so far as to say rheumatism had not been localized in his right knee, it had troubled him but little, and the chiropractor had not treated that knee on its own account, but merely incidentally, in connection with the left knee, which was the bad knee. Even his own experts would not accept that theory, when he tried to elicit opinions from them based upon it. They voluntarily put into the foundations for the opinions they did give, facts not in the hypothetical question—rheumatic condition existing before injury, upon which the injury was superimposed. The chiropractor told of treating the right knee only, and it developed that the last time was on April 11, just two weeks before plaintiff was injured. All the treatment plaintiff's so-called bad knee received was from placing the therapeutic light between his knees when treating the right knee. Plaintiff did not see fit to take the witness stand to rebut any of the chiropractor's testimony; but leaving that testimony at one side, plaintiff's case as he framed it was wrecked by the X-ray plates. On cross-examination he told of going to Doctor Allen's office on recommendation of the chiropractor, to have the pictures taken. He knew what the plates disclosed.

His attorney had Doctor Allen's report in his possession at the trial, and cross-examined Doctor Allen upon it. This unimpeachable, demonstrable evidence was deliberately suppressed from the hypothetical question, and the opinions of plaintiff's experts were based on the old-style diagnosis prevailing before the X-ray was discovered, and the hypothetical question. The result was that, up to the time plaintiff closed his case-in-chief, he had been jockeying, both in pleading and proof, and, when the X-ray plates and the report of the commission appointed by the court to examine plaintiff came in, there appeared for the first time authoritative information relating to plaintiff's condition.

Cause of plaintiff's present disability was the principal question in the case. The question was one to be determined by scientific method and opinion. Bone growth, the result of organic processes, and visible to the trained eye, is filling up plaintiff's knee joint. At the time of the accident, the growth had developed sufficiently to push the patella out of place. A doctor's opinion which leaves these facts out of consideration, is not pertinent to this case. The commissioners appointed by the court said it was the bone growth which was troubling plaintiff, and the blow on the knee nearly a year before had nothing to do with his condition at the time of the trial. This testimony was not disputed. In rebuttal, plaintiff did not recall his experts and ask them what their opinion would be in view of the disclosure made by the X-ray examination, or call other experts to meet the testimony of the commissioners relating to cause of present disability. Therefore, there is no conflict in the evidence relating to cause of present disability.

The workmen's compensation act provides compensation for disability resulting from accidental injury. It does not provide compensation for chronic rheumatism of long standing; and the courts may not enlarge the statute because the employee is a physical ruin and the employer is a big corporation, perhaps insured. By juggling judicial procedure, plaintiff got to the jury with a sham case, knowing just what he would be obliged to meet. With full opportunity to do so, he did not attempt to meet the genuine case which came in after he rested, and he is not entitled to another trial.

There is some difficulty in ordering a proper judgment. The blow on plaintiff's knee disabled him for a time, and for that disability he is entitled to compensation. When the X-ray plates were taken, there was competent opinion that he was then suffering from trau-

matic synovitis. The last account he offered of the condition of his knee was that of Doctor Faust, who examined him in September, 1924. The trial occurred in January, 1925. The doctors appointed by the court required plaintiff to strip, and they examined every part of his body. They discovered just two things the matter with plaintiff's knee: a slight tenderness on the inner margin, and some limitation of motion in extension. Doctor Campbell said plaintiff voluntarily limited use of his knee, but there was some actual limitation. Plaintiff refrained from exhibiting his two knees to the jury for comparison, and at least by the time of the trial the effect of the accident had been spent. The court is authorized to reduce a judgment by deduction of any unwarranted sum. There is no warrant for compensation after the trial, and the judgment must be modified to that extent. Plaintiff suffered total disability for a time, and there is practical difficulty in determining just when disability produced by the accident ceased. Therefore, the court has concluded to give defendant this option, to be exercised within ten days after the mandate goes down: To submit to judgment for total disability from date of accident to date of trial, or to take a new trial.

Plaintiff raises some questions of practice. One of the errors assigned is that defendant's motion for new trial was overruled. The motion for new trial was based on all statutory grounds except accident and surprise and corruption of the party obtaining the verdict. In the brief it is specified that plaintiff's disability is not attributable to the injury of which he complains, and it is argued that his case was unsupported except by the testimony of his expert witnesses, given in response to improper hypothetical questions. Therefore, the question of sufficiency of evidence to sustain the verdict is properly raised. Plaintiff challenges the abstract, and because he was handicapped in presentation of his case to this court by late service of defendant's brief, the court exercised its authority to order the transcript to be sent up, and the decision is based entirely on the transcript.

The cause is remanded to the district court with direction to proceed further in accordance with this opinion.

JOHNSTON, C. J., dissenting.