No. 29,910.

WATSON STECHER, *Appellee*, v. LONDON GUARANTEE & ACCIDENT COMPANY, LIMITED, OF LONDON, ENGLAND, *Appellant*.

(298 Pac. 754.)

Opinion filed May 9, 1931.

*Chester I. Long, Claude I. Depew, W. E. Stanley, William C. Hook* and *J. T. Klepper,* all of Wichita, for the appellant.

*C. G. Yankey, John Gleason, Kenneth K. Cox, C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON; J.: This is an action to recover upon an accident policy for being struck by lightning, with the usual requirement that the bodily injuries sustained be through accidental means, directly and independently of all other causes. The verdict and judgment were for the plaintiff.

Defendant insurance company appeals, assigning as error the overruling of objections to the use and form of certain hypothetical questions asked by plaintiff, the overruling of the demurrer to evidence of plaintiff, the giving and refusal to give certain instructions and overruling the motion of defendant to set aside answers returned by the jury to certain special questions. There was no contention that the plaintiff was not suffering a disability at the time of the trial from neurasthenia and psychoneurosis, and the jury in two separate answers so found.

The contention of the appellant is that this condition was not the result of a stroke of lightning on June 16, 1927, but that it had existed nearly a month prior to that time and was coexistent with an operation for appendicitis on May 20, 1927, and was aggravated by two subsequent operations which were natural sequents of the operation for appendicitis.

The jury answered several questions contrary to the appellant's contention on these lines, among which are the following:

"What do you find to be the moving, direct and proximate cause of the plaintiff's condition? A. Struck by lightning.

"Do you find that the plaintiff's disability resulted from bodily injuries sustained by accidental means directly and independently of all other causes? A. Yes.

. . . . . . . . . . . . .

"If you answer question No. 1 in the affirmative, then state:
(a) When? A. June 16, 1927.
(b) How? A. Struck by lightning.
(c) The nature and character of said bodily injuries. A. Shock to nervous system.

"Do you find that plaintiff Stecher was suffering from neurasthenia on or prior to May 20, 1927? A. No.

"Do you find that plaintiff Stecher was suffering from psychoneurosis on or prior to May 20, 1927? A. No."

The appellant contends that the verdict, answers to special questions and judgment should not stand and the plaintiff be permitted

to recover when the undisputed evidence submitted by the plaintiff shows that the disease or physical ailment, which is the sole cause of the present inability of the plaintiff to work, is the same identical disease from which he was suffering nearly a month before the lightning stroke occurred.

This undisputed evidence submitted by the plaintiff, showing the preëxistence and identity of the disease now producing or causing the disability, is the basis of the argument of the appellant for the errors claimed to have been committed by the trial court in overruling the objections to certain hypothetical questions asked by plaintiff, overruling the demurrer to the evidence of plaintiff, giving and refusal of instructions and refusing to set aside answers to certain special questions. The argument of the appellant contained in the very statement of the proposition is unanswerable if the premises are accurate.

To determine the accuracy and force of premises as stated, some preliminary inquiries are necessary. First, is the plaintiff bound and concluded by the testimony of his own witness, when the evidence given by such witness is against the interest of the plaintiff? The emphasis placed upon the fact of the evidence having been submitted by the plaintiff would lead one to infer there was a distinct difference as to the source of it, but while a party cannot impeach his own witness nor attempt to discount his credibility, yet he is never concluded by the statements made by any of his witnesses other than himself, and can with his other witnesses contradict such statements, leaving to the jury to determine, even among his own witnesses, the matter of weight and credibility. (*Wallach v. Wylie,* 28 Kan. 138; *Deering v. Cunningham,* 63 Kan. 174, 65 Pac. 263; and *Walls v. Zinc Co.,* 113 Kan. 700, 216 Pac. 308.)

The evidence referred to as having been submitted by the plaintiff was that of the physician and surgeon who was selected and employed by the plaintiff himself to perform the operation for appendicitis, and the two subsequent operations, and who did perform them. He was the only physician who testified as to the facts and circumstances in connection with or surrounding the three operations. Many of the details concerning those operations are apparently not necessary to the determination of the issues here involved relative to the origin and identity of the disease with which the plaintiff now suffers. As far as any of the details may be involved, the evi-

dence of this physician was undisputed by other physicians. His professional opinions and conclusions, however, were disputed by them in some instances based upon the facts and circumstances related by him, and some of his opinions were disputed by the plaintiff himself and by other witnesses who were not physicians.

Special emphasis is placed upon the testimony of this physician as to the physical condition of the plaintiff prior to the lightning incident on June 16, 1927. He testified in answer to questions asked by the plaintiff's counsel that he saw the plaintiff shortly before the trial and that "He is suffering from chronic neurasthenia." He was then asked, "What in your opinion, Doctor, is the cause of that condition which you last found him to be in?" and his answer was, "He had the condition when I first saw him. He was neurasthenic at that time in May, 1927."

As opposed to this opinion the plaintiff himself testified that he was twenty-nine years old, gave his business, duties and activities and further said: "My health was in good shape prior to March. I weighed 150 pounds. Did not know there was anything wrong with me. I slept well at nights and worked hard during the daytime. On the 20th of May, 1927, I was operated on. I was in the hospital nineteen days from the operation. I had been feeling good and expected to go to work within ten days. I was not nervous. I slept well nights and was able to be up walking around." At another place, after describing the lightning stroke and his condition two or three days thereafter, he said: "I began to feel nervous and some pain started back."

The mother of the plaintiff testified that before he was operated on he was "an industrious, vigorous, healthy boy," and described his nervous condition after the stroke.

His father testified with reference to his condition after the operation for appendicitis that "He was not nervous after he got back from the hospital."

Three other neighbors and friends testified to his apparent good health prior to the time of his operation for appendicitis.

If the existence of this nervous condition professionally expressed by the word "neurasthenia" is such as can be detected and recognized only by an expert, then the evidence of this physician as to it prior to the operation is undisputed. Appellant cites the case of *Sly v. Powell,* 87 Kan. 142, 123 Pac. 881, in support of the theory

that it was a matter for expert medical testimony only and in justification of the position maintained by the appellant that the evidence along this line was undisputed. It was there said in the opinion that—

"It may be said here that, while some palpable conditions may be understood and stated by a layman, the questions whether there was a fracture of the bone, or whether the articular surfaces of the joint were normal, . . . and whether, in the condition of the finger, appellant had given the patient skillful and proper treatment, should not be determined on the testimony of unskilled witnesses." (p. 148.)

That was an action for damages for malpractice, and in the first paragraph of the syllabus it was said:

"In an action against a physician and surgeon to recover damages for malpractice for failing to properly reduce a dislocation and treat an injured hand nonexpert witnesses can testify as to external appearances and manifest conditions observable by anyone, but whether a surgical operation has been performed with a reasonable degree of skill, knowledge and care, and whether the patient was thereafter skillfully and properly treated, are questions of science to be established by the testimony of witnesses of special skill and experience and not by testimony of those who are without special learning and skill as to such operations and practice."

In another case of like character it was held:

"Ordinarily only physicians and surgeons of skill and experience are competent to testify as to whether a patient has been treated or an operation performed with a reasonable degree of skill and care, but testimony as to many matters connected with the treatment of a patient, such as the statements and acts of the physician or surgeon as well as the external appearances and manifest conditions which are observable by anyone, may be given by nonexpert witnesses." . (*Yard v. Gibbons*, 95 Kan. 802, syl. ¶ 3, 149 Pac. 422.)

The court in its instructions defined neurasthenia and psychoneurosis as a nervous debility. Webster defines the former as "a condition of nervous debility," "nervous prostration," and the latter as "any mental neurosis," and neurosis as "a functional nervous affection or disease." Is this condition such—as was said in the decisions above quoted—as can only be detected and observed by experts, or is it one of those "external appearances and manifest conditions which are observable by anyone?" Is nervous debility something the party himself would know he had, if he had it, and could it be recognized and observed by his parents and intimate neighbors? We are not convinced that the fact of its presence or absence is something known only to the expert, and if not, then the evidence of

this particular physician to the effect that the plaintiff had this nervous condition in May is not undisputed.

The first assignment of error presented in the brief of appellant is the overruling of the objections to improper hypothetical questions. It is urged that the questions were improper because they failed to contain substantial facts shown by the evidence, and the case of *Kelsey v. Armour & Co.,* 119 Kan. 837, 241 Pac. 453, with others is cited in support of the proposition. There the evidence showed an X-ray plate had been made one month after the injury which conclusively showed bone growths in the knee joint; this evidence, shown by the plates not being rebutted, the court held should have been included in the hypothetical question. The part omitted was uncontroverted and admitted to be a fact, and that makes the distinction. No one hypothetical question can contain both sides of a controverted matter. The questions here did contain the statement of the plaintiff himself and other witnesses as to his good health—assume that prior to May 16 "he was a healthy, normal, vigorous individual."

The criticism of the hypothetical question propounded to Doctor Conwell has merit. He was the first witness called by the plaintiff and admittedly called out of order, and the question asked him was based upon the history of the case given by plaintiff and upon his own examination by X-ray and otherwise. If he had been the only professional witness giving an opinion, and the facts upon which the question to him was based had not been in substance introduced later, the admission of his opinion might have been serious error. This situation, however, does not apply to any of the other physicians called by the plaintiff.

Objection is made to the hypothetical questions because they did not contain more details as to the second and third operations and did not contain a statement that the body did not show any marks or burns after the lightning stroke. The fact of the second and third operations was stated, and in most instances what was found and accomplished, but the questions did not contain reasons or theory assigned as no witness seemed to attribute to them any producing cause. They were regarded as sequels to the operation for appendicitis. The physician performing them said they are not responsible for his condition. He was supported in this view by Doctor Hartman. So the details of the second and third operations, we think,

were not essential to a proper hypothetical question. As to the negative situation of there being no marks or objective injuries, the giving of other features and omitting such would impliedly indicate the absence of such.

We think there was no error in overruling the objection to the hypothetical questions asked the several physicians. The one asked Doctor Conwell is subject to criticism, but under all the circumstances we think it was not prejudicial.

The error assigned as to the overruling of the demurrer of the defendant to plaintiff's evidence, failing to give a peremptory instruction for a verdict for defendant, and refusal to set aside the answers to some of the special questions are all based upon the appellant's theory that the evidence of the physician performing the operation as to the condition of the plaintiff before the lightning stroke was undisputed, and since we have held otherwise, and since there was at least some evidence to the contrary, these matters are all disposed of under the rule that some evidence is all that is required to support such rulings and findings upon appeal.

Objection is made to the answers to special questions Nos. 8 and 10, to the effect that the second and third operations were exploratory. The evidence of the physician making both of them was that the third was exploratory, and the plaintiff stated in his evidence with reference to the second that his physician told him before the operation "that they would have to operate again to find out what was wrong." If the jury credited this testimony, it would be sufficient to sustain these answers.

Appellant insists that the demurrer to plaintiff's evidence should have been sustained, and the plaintiff should not be permitted to recover in this action because there were no bodily injuries shown. The policy insures against bodily injuries, and it is argued that neurasthenia or nervous debility is not a bodily injury. Several cases are cited from this and other states determining the right of parties where there were no objective injuries of the body, but all of them are damage suits except one and it was an action for workmen's compensation and consequently we get very little help as to the situation here involved. The apparent sole protection afforded by this policy is against "bodily injuries," and under the provision for double liability it specifically names "by being struck by lightning." Our attention is not called to any provision in the policy which

would limit the liability to external or visible injuries. Many accident policies do so provide and, of course, would be protected under such clause.

"A very usual provision in accident insurance policies is that the insurer shall not be liable unless there is some external and visible sign or mark of the injury, or the injury shall leave a visible mark on the body, or some other language of similar import, in which case no recovery can be had where the requirement is not met." (1 C. J. 433.)

Without any provision requiring such injuries to be objective and with the specific inclusion of stroke by lightning, we are inclined to think that the requirement of the injury to be objective would be reading into the contract more than could reasonably be implied.

It was recently held in the case of *Moore v. Fidelity & Casualty Co.*, 203 Cal. 465, 265 Pac. 207, that blood poisoning was a bodily injury within the meaning of these terms in an accident policy.

We have carefully considered the instructions refused and those given, and, as usual, we find the court did not include in the ones given all and every feature contained in those requested, and, as usual, some omissions and changes are apparently proper, while others, if added as requested, might have been proper; but without specifying each of the many details enumerated concerning them in appellant's brief, we conclude that no substantial right of the defendant was omitted or misdirected and there was no reversible or prejudicial error in the giving and the refusal of instructions.

The judgment is affirmed.