No. 32,944

JOHN W. SON, *Appellee*, v. EAGLE-PICHER MINING & SMELTING COMPANY, *Appellant*.

(58 P. 2d 44)

Opinion filed June 6, 1936.

*F. W. Boss, Marc G. Boss,* both of Columbus, and *John Campbell,* of Joplin, Mo., for the appellant.

*Charles Stephens* and *Jerome Harman,* both of Columbus, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was a compensation case where the compensation commissioner rendered an award in favor of the claimant, which was affirmed by the district court, and an appeal was taken to this court from that judgment.

The principal point raised by the appellant is that there is insufficient competent evidence of causal connection between the alleged accident and the disability. Most of the usual preliminary features of a compensation case, as employment, being under the act, notice of alleged accident, demand for compensation and amount of wages are not controverted in this case. It is not admitted by the respondent that an accident actually occurred, yet counsel for respondent frankly concede that because there was some evidence of such accident that under the general rule in that connection this court is probably bound by the finding of the trial court in that particular.

The accident, as the claimant relates it, occurred on July 20, 1935, about 3:30 p. m., while he was wheeling a load of battery scraps of lead with a wheelbarrow from a railroad boxcar to a pit, the load weighing about four hundred pounds; that he stepped on a round battery terminal post lying on the floor, which caused his foot to slip and he lost his balance; that he went down on one knee but made an effort to keep the load from turning over, and the effort and exertion to keep it from turning over caused him to feel a pain in his chest and running up and down his back and up into his head. He described it as an awful jerk or jar. He left the wheelbarrow and walked about twenty feet to the water fountain where he sat down and remained there until the closing hour at 4 p. m. Then, after looking for the manager and failing to find him, he went home, riding in another workman's car. That night he went to see Doctor Browne, who examined him and treated him, and told him not to work the next day. He went to the plant the next morning and told them of the doctor's orders not to work. He was up and around for three weeks and then went to bed, where he was still remaining at the time of the hearing before the commissioner about two months later.

The trial court, in affirming the award of the commissioner, found not only that the claimant met with a personal injury by accident arising out of and in the course of his employment, but from the effect of said injury and as a result thereof he is now totally disabled.

There was no point urged about the actual disability of the claimant, so the serious question presented in the appeal is the sufficiency and competency of the evidence of causal connection between the accident and the disability. Of course the burden of proof is upon the claimant to establish this causal connection. It is correctly stated by counsel for respondent that this is largely, if not wholly, dependent upon skilled medical and scientific testimony. Three such witnesses testified, one called by the claimant and two by the respondent. It is urged in the first place that the physician who testified for the claimant entirely failed to state that the present condition of the claimant did result from the accident, and that the answer that it could have so resulted was not sufficient, citing. *Whitaker v. Pandandle Eastern P. L. Co.,* 142 Kan. 314, 46 P. 2d 862; *Fair v. Golden Rule Refining Co.,* 134 Kan. 623, 7 P. 2d 70; and *Phillips v. Okey,* 111 Kan. 732, 207 Pac. 1106. The Whitaker case was where the claimant was attempting to load a 250-pound gas tank into a truck. His foot slipped and the tank threw him back, and the court said, after reviewing in detail the testimony of the one doctor who testified for the claimant:

"Claimant relies on the fact that, as he testified, he was in good condition before the accident and began to be sick soon after it. It will be seen that the only medical testimony that was furnished by claimant was that it was possible that an accident such as that described by claimant might have caused his condition." (p. 317.)

In the same connection, as a part of the opinion in the Whitaker case, the court made the following analysis of the other two cases above cited, to wit:

"This court considered a similar question in *Fair v. Golden Rule Refining Co.,* 134 Kan. 623, 7 P. 2d 70. That was a case where a traveling auditor was compelled to crank his car and the extra exertion caused him to be all 'worn out.' In about a week he was stricken with a cerebral hemorrhage. The court held that there was no substantial testimony to sustain the judgment of the trial court allowing compensation. The court said:

" 'What we mean to hold is that before a claim for compensation can be sustained there must be substantial, competent evidence to support it. Claims cannot be sustained which rest purely on conjecture, or upon abstract theories not applicable to the facts.' (p. 629.)

"To the same effect is the case of *Phillips v. Okey,* 111 Kan. 732, 207 Pac. 1106. There a wife was claiming compensation for the death of her husband. He had died from an abscess which had formed in his chest. The contention of the claimant was that the abscess was produced or was caused to burst by the inhaling of bad air in the mines. The doctor testified that he could not

ascertain the cause of the abscess. This court affirmed the judgment of the trial court denying compensation." (p. 317.)

In the case at bar the doctor who testified for the plaintiff had made two examinations of him prior to the hearing, and some of the questions asked him and the answers given by him are as follows:

"Q. What, if any, conclusions did you reach then as to whether or not he had sustained some injury? A. I couldn't say about an injury. I could tell his condition at the time I saw him, but, of course, I would have to depend on what he told me about having had any injury.

"Q. The condition you found there, was it such that you think it could have been produced by trauma? A. It could have been, yes."

He then described his physical condition, temperature, pulse, reflex, blood pressure, the condition of his spine and legs and the pain he was suffering. He was then asked a long hypothetical question based partly upon statements made by claimant as to the accident and upon his examination of the claimant, and when he said he had an opinion as to the cause of his present condition he was asked to give that opinion, in answer to which request he stated: "That the injury was the beginning of his trouble." In response to further questions along the same line he answered as follows:

"I wouldn't say absolutely as to whether his condition is permanent or otherwise, but his condition is severe, and he is practically helpless, and without stating absolutely I will say that it is apt to be permanent. . . . It could have been caused by an accidental injury and it could have been caused not by an accident, either one. When you have a spinal condition of that kind, you can't always say what it is . . . I think it could have been caused by an injury."

On cross-examination the witness testified that all of claimant's symptoms could be due "possibly to causes other than injury, accidental injury."

These answers are very different from those in the Whitaker case, where the court described them as stating that it was possible that an accident might have caused the present condition.

In the case at bar in connection with his statement that it could have been from some other cause the doctor gave it as his opinion that the injury was the beginning of his trouble. The fact that he frankly admitted that something other than an injury could have been the cause is only an evidence of his professional honesty. In the case of *Roark v. Greeno,* 61 Kan. 299, 59 Pac. 655, it was said:

"The contention of counsel for defendant in error, that the physicians testifying should have been required to state with certainty the cause of plaintiff's

condition after a hypothetical case had been submitted to them, would be supposing an exactness in medical science to which its most learned followers have not yet attained." (p. 304.)

The evidence was positive opinion evidence, and that is all that is or should be required.

Both doctors who testified for respondent, in addition to giving their opinions, frankly admitted modifications thereof, one saying in direct examination, "There is another condition that will produce the same symptoms that this man has," and the other one said certain other things might cause certain results. This does not show that no opinion was expressed or professional judgment given.

A very similar case is *Voiles v. Procter & Gamble Mfg. Co.*, 141 Kan. 451, 41 P. 2d 723, where the claimant reached up for a box of Oxydol, weighing between forty and sixty pounds, and as he was taking it down he felt a pain in his back. Medical testimony was introduced, and it was said in the opinion:

"There seems to have been no dispute but that claimant was disabled at the time of the hearing. Some of the doctor witnesses testified they found no evidence of a strain, but they did find diseased tonsils and infected teeth. They testified this caused his condition. . . .

"There was some evidence that the disability of claimant came from causes other than the diseased tonsils and teeth. The argument of respondent would mean the trial court was compelled to believe the evidence of the doctors who testified the condition of claimant was caused by the diseased teeth and tonsils. We cannot say that such is the law. At most, the evidence of the doctors was only an opinion. No one could state positively the disability of claimant came from the focal infection. On the other hand, the claimant testified the accident occurred, and that before that he was active, while after that he suffered and continued to suffer a disability. In view of such testimony we cannot say there was no evidence that plaintiff suffered disability from the accident." (p. 452.)

Respondent refers to the evidence of one of the doctors testifying in defense that claimant had bad teeth and infected tonsils, and no evidence was introduced to dispute this; and it contradicted the evidence of the claimant and his wife that claimant was in prior good health, and that the hypothetical questions asked the expert by the claimant's counsel were improper and incomplete in that they did not contain these conditions, so that the conclusions drawn from such incomplete description in the hypothetical questions were merely surmises, conjectures and purely speculative, citing *Kelsey v. Armour & Co.*, 119 Kan. 837, 241 Pac. 453. The evidence in the Kelsey case that was omitted from the hypothetical question was

that which was shown by X-ray plates introduced by respondent, which unmistakably showed bone growths in the knee joint of slow formation resulting from organic processes and not from traumatism as testified by specialists called by claimant. The court there held that—

". . . plaintiff's expert testimony was based on an hypothesis which ignored authentic evidence indispensable to a conclusion of value in determining 'cause of disability, and was insufficient to sustain a verdict in his favor for permanent disability." (Syl.)

Bad teeth and tonsils are not such physical defects as are entirely concealed from physicians, or even from the patient himself or his family, as was the bone growth in the knee. The three expert professional men appointed by the court in the Kelsey case did not by their examination discover the bone growth shown by the X-ray plates, and the respondent in that case in cross-examination of them asked hypothetical questions based upon the additional information furnished by the X-ray plates, which of course was proper.

Where there are different theories, supported by evidence of injury or disease, different hypothetical questions are propounded. In the case of *Stecher v. London Guarantee & Accident Co.*, 133 Kan. 89, 298 Pac. 754, it was held not to be necessary to include all the details of such elements or features in the hypothetical question, and that the presence or absence of some manifest physical conditions need not be limited to expert or skilled witnesses, and therefore the conditions testified to by such witnesses were not necessarily undisputed. In that case it was further held:

"Where there is a conflict of testimony as to the nervous condition of the plaintiff, hypothetical questions can be properly framed along either line of such disputed condition, and the failure to include in the questions the theory maintained by the defendant and supported by the testimony of an expert is not error." (Syl. ¶ 3.)

A recent and quite similar case, except that the injury received when a loaded freight elevator in a packing plant fell six floors contributed to and aggravated an infection, instead of being the beginning of the trouble as in this case, was that of *Vera v. Swift & Co.*, 143 Kan. 593, 56 P. 2d 96. In that case the court concluded by saying—

"The question is one of law only. Under the circumstances the court does not feel authorized to say there was no substantial evidence to sustain the finding of the district court, and the judgment for compensation is affirmed." (p. 605.)

Many points are raised in the argument of respondent as to the hypothetical questions propounded to claimant's expert witness, one of which was that it was based upon hearsay statements of the claimant. As to this matter there are two answers; that by order of the commissioner the doctor was examined before the claimant, and later the claimant testified to substantially all the matters of history that were included in the hypothetical question; and also that the doctor was asked a hypothetical question eliminating the history entirely, and he adhered to his original answer and frankly admitted, as did one of the two doctors called by the respondent, that "when you have a spinal condition of that kind, you can't always say what it is."

We feel like saying, as was said in the Swift case, that under the circumstances this court, considering only the questions of law, does not feel authorized to say there was no substantial evidence to sustain the finding of the district court and the judgment for compensation.

Another question is raised by appellant as to the effect of the omission of the two words "or evidence" from the amendment of the section of the compensation law in 1927, being R. S. 1933 Supp. 44-523, where the legislature specifically directed that in investigations for compensation the technical rules of procedure would not be binding. This matter, as we understand it, has been passed upon twice to the effect that procedure under this amendment includes evidence. (*Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276; and *Walz v. Missouri Pac. Rld. Co.*, 142 Kan. 164, 45 P. 2d 861.)

The judgment is affirmed.