No. 19,553.

MAUDE M. YARD, *Appellee,* v. JAMES E. GIBBONS, *Appellant.*

SYLLABUS BY THE COURT.

1. PHYSICIAN AND SURGEON—*Obstetrics—Malpractice—Petition States Single Cause of Action.* The petition in which the plaintiff alleged in substance that the defendant was employed as a physician to care for her in her confinement and that he negligently produced a premature delivery, causing a laceration, and also failed to advise her of her condition and to carefully and skillfully treat her after the birth of the child, by all of which she was severely injured, states a single cause of action.

2. SAME—*Malpractice—Test of Treatment — Expert Witnesses —Different Schools of Medicine.* Whether a physician or surgeon charged with malpractice has treated the patient or performed an operation with reasonable skill and care is ordinarily to be tested by the standards of the school to which

Yard v. Gibbons.

the physician or surgeon belongs, but if there is uniformity in the principles and rules of practice of the different schools as to any particular branch a qualified practitioner of any of the schools is competent to testify as to whether the treatment administered or the operation performed within the scope mentioned was properly or negligently done.

3. SAME—*Malpractice—Nonexpert Witnesses.* Ordinarily only physicians and surgeons of skill and experience are competent to testify as to whether a patient has been treated or an operation performed with a reasonable degree of skill and care, but testimony as to many matters connected with the treatment of a patient, such as the statements and acts of the physician or surgeon as well as the external appearances and manifest conditions which are observable by any one, may be given by nonexpert witnesses.

4. TRIAL—*Instruction— Not a Factor in the Verdict—No Error.* The propriety of an instruction upon a feature of the case becomes immaterial when a special finding of the jury eliminates that feature from the case and shows that it was not a factor in the verdict.

5. PHYSICIANS—*Obstetrics—Duty Required of Attendant Physician.* A physician employed in an obstetrical case is required to care for and aid the patient not only during her confinement and the delivery of the child, but it is his duty to make a careful examination of the patient and give reasonable and proper attention to any lacerations or injuries resulting from the delivery, and if he fails in this respect, or to inform the patient or those caring for her as to her condition, or to give them instructions so that they may act intelligently in the further care and treatment of the patient, he is guilty of negligence and liable for the resulting injuries.

6. TRIAL—*Excessive Verdict—May be Modified or Set Aside.* The approval of the verdict of the jury is essential to the validity of a judgment based thereon, and in determining whether the amount awarded by the jury is excessive the trial court must act upon its own judgment, and if satisfied that the award is excessive the verdict should be modified or set aside. If there is an absence of passion or prejudice in the jury the court may require the successful party to remit so much of the award as is deemed to be excessive or submit to a new trial.

7. TRIAL—*No Prejudicial Error in Record.* The instructions examined and found to be within the issues of the case and free from prejudicial error, and the findings and verdict to be supported by the testimony.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed June 12, 1915. Affirmed.

*Park B. Pulsifer,* and *Charles L. Hunt,* both of Concordia, for the appellant.

*Homer Kennett, Olin Hunter, F. W. Sturges, F. W. Sturges, jr.,* all of Concordia, *T. F. Garver,* and *R. D. Garver,* both of Topeka,.for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Maude M. Yard, a married woman, against James E. Gibbons, an osteopathic physician, to recover $10,000 damages for alleged negligent treatment of her while employed as her physician in a case of childbirth. Plaintiff alleged that in 1911 she employed defendant to attend her at her expected confinement, and he agreed that he could and would do so in a careful and skillful manner; that on or about November 9, 1911, defendant was notified to attend her, and called upon her in the afternoon and evening; that prior to the birth of the child and about nine or ten o'clock of the evening of November 9, 1911, defendant was called by telephone to attend in another confinement case, and in his desire to go to this latter case he at once, prematurely, unnecessarily, and in a negligent, ignorant, unskillful and brutal manner, applied instruments and produced a premature birth and delivery; and that in so doing he lacerated and tore plaintiff, to her great injury. Plaintiff further alleged that she at once notified the defendant of her condition and requested him to care for and relieve her; that he advised that her condition was not unnatural or unusual, that she had been properly treated and would recover without further treatment; and that relying upon such statements she did not and never has recovered, and by reason of such careless and negligent treatment by defendant has suffered and will continue to suffer great

pain, and her health has been injured and ruined. Defendant answered by general denial, and also alleged that if plaintiff's condition was as she claimed it was because of her own fault and neglect or of persons other than himself. On the trial of the case plaintiff's evidence was to the effect that the presentation was an ordinary one; that it was not necessary to use instruments; that when the instruments were used plaintiff was not fully under the influence of the anæsthetic; that defendant delivered the child hastily by "one strong pull," and the afterbirth about ten minutes later, and that the defendant did not afterward properly care for and relieve the lacerations caused by the hasty use of the instruments. In behalf of the defendant there was evidence to the effect that the birth was unusual and what is known as a face presentation, and this was, in part at least, corroborated by the testimony of a woman who cared for the child after its birth; that because of the presentation it was necessary to use instruments; that when the instruments were used plaintiff was under the influence of the anæsthetic; that the child was delivered not too hastily, but with the dispatch rendered necessary by the unusual manner of presentation and consequent possibility of strangulation of the child; that the afterbirth was delivered in about forty-five minutes after the child's birth, and that when defendant learned of the laceration and injury to plaintiff he arranged with a competent surgeon to have it repaired, but that plaintiff refused to permit the necessary operation to be performed. The jury's verdict was in plaintiff's favor, and in answer to special questions showed that she was allowed $1000 for pain and suffering and $2918 for permanent injuries. Motions for judgment on the findings, to set aside certain findings, and for a new trial were overruled, but the court did require plaintiff to remit $1500 of the amount awarded, or failing to remit a new trial would be granted. To avoid a new trial the

plaintiff remitted the amount stated, and judgment was rendered for $2418. From this judgment defendant appeals.

The principal complaint is that the evidence does not support the verdict, but complaint is also made of rulings of the court on the pleadings, evidence and instructions.

It is first insisted that the petition contained two causes of action and that the court erred in refusing to require them to be separately pleaded. Only a single cause of action is alleged in the amended petition. It is that defendant, who was employed as a physician to care for the plaintiff in her confinement, did so in an unskillful and negligent manner, and that by reason of his negligence and fault she suffered injury and loss for which she sought a recovery. It was alleged that there was negligent treatment up to and including the delivery of the plaintiff's child, and also in caring for her after the delivery; but it was not necessary to treat the negligence of the defendant before and after the birth of the child as separate causes of action any more than to have treated his neglect at each call or visit as separate causes of action. There was a single employment, and any failure to treat the plaintiff with due skill and care during that period, whether before or after the birth of the child, afforded but one cause of action.

There is complaint that improper evidence was received. The defendant is an osteopathic physician and professes to practice according to the rules and methods of that branch of the profession. Physicians of the regular school were permitted to testify as to the progress and condition of labor in an obstetrical case, the methods of delivery and the proper treatment of the mother after the birth of the child. It is true, as defendant contends, that where a physician or surgeon is charged with malpractice his treatment and advice are to be tested by the standards of the school to which he belongs. (*Force v. Gregory,* 63 Conn. 167, 27 Atl.

1116, 22 L. R. A. 343, 38 Am. St. Rep. 371; *Patten v. Wiggin,* 51 Maine, 594, 81 Am. Dec. 593; *Martin v. Courtney,* 75 Minn. 255, 77 N. W. 813; *Nelson, by guardian ad litem, v. Harrington,* 72 Wis. 591, 40 N. W. 228, 1 L. R. A. 719, 7 Am. St. Rep. 900.) In some cases and ailments, however, the schools of medicine differ but little as to the course to be pursued or the treatment administered. Where there is practical uniformity in the rules of practice and treatment regular practitioners of any school are competent witnesses as to the proper diagnosis and treatment of a given case, or where a person who holds himself out as a medical expert or healer has no fixed rules of practice he is still bound to treat patients with ordinary and reasonable skill and care, and competent physicians regularly engaged in the practice are competent witnesses as to whether the treatment administered in the case was properly or negligently performed. (*Nelson, by guardian ad litem, v. Harrington,* supra; *Longan v. Weltmer,* 180 Mo. 322, 79 S. W. 655, 64 L. R. A. 969, 103 Am. St. Rep. 573; *Grainger v. Still,* 187 Mo. 197, 85 S. W. 1114, 70 L. R. A. 49.) According to the testimony, the rules and principles applied in obstetrical cases by the regular school are substantially the same as those which osteopaths apply in such cases. Edgar on The Practice of Obstetrics is a standard work in the regular school, and the defendant, who is a gradute of the osteopathic school at Kirksville, Mo., testified that Edgar on The Practice of Obstetrics is used at that school and that it was the work which he studied there. Another osteopath was called as a witness, and he testified that the standard work in the Kirksville school was Edgar on The Practice of Obstetrics and that the students of that institution are taught obstetrics along the lines laid down in Edgar's work except as to drugs. Since the doctors of both schools follow the teachings of Edgar and substantially employ the same methods in obstetrical cases, physicians of the regular schools were qual-

ified to testify as to the methods of treatment and the care which should be exercised in parturition cases. This question was before the supreme court of Missouri and it was said:

"If it be true that osteopaths teach the same textbooks as other schools of medicine, then there can be no reason why a physician of any other school is not a competent witness to express an opinion as to the correctness of the diagnosis and treatment of hip disease by an osteopath, because *pro hac vice* the rules and practices of both are the same." (*Grainger v. Still,* 187 Mo. 197, 224, 85 S. W. 1114, 70 L. R. A. 49.)

It is contended that the mother of the plaintiff was erroneously permitted to give testimony of an expert character. Most of her testimony related to what was said and done by the defendant while attending the plaintiff, and about which any one cognizant of the facts might testify. She did state that early in the evening, a considerable time before the child was born, she made an examination of her daughter and was able to feel the head of the child, and stated that "It was not down much." This was as close as she came to giving testimony of an expert character, and it is easy to see that, however it may be viewed, it could not have been prejudicial error. Ordinarily only physicians and surgeons of special skill and experience are competent to testify whether a surgical operation has been performed or a patient treated with a reasonable degree of skill and care, but testimony as to many things connected with a case of this kind, such as the acts and statements of the physician or surgeon as well as the external appearances and manifest conditions observable by any one, may be given by nonexpert witnesses. (*Sly v. Powell,* 87 Kan. 142, 123 Pac. 881.) Aside from that, the witness herself was the mother of five children. She had experience with other women in childbirth, and had been occasionally called to take care of them and nurse them. With this much experience there were certainly many things

connected with midwifery about which she was quali-
fied to testify.

Defendant complains that he was not allowed to
show that about two weeks after the birth of the child
the plaintiff's mother had said to a neighbor that there
was a laceration, but that they had decided not to have
it repaired until plaintiff had become stronger and the
baby was weaned.  There was no claim that this state-
ment was made in the presence of the plaintiff, or that
she had authorized it to be made.  The mere fact that
the witness spoke to the doctor about attending her
daughter, or performed some other friendly act in
that regard, would not make her subsequent state-
ments competent against the plaintiff for whom the
service was performed.  The offered testimony was
hearsay, and was not within any recognized exception.

It is contended that the court erred in giving in-
structions to the jury, and also in the refusal of some
which were requested.  Several of the requests were
to the effect that there could be no recovery for the
failure of the defendant to sew up or procure the sew-
ing up of the laceration caused in the delivery of the
child.  It is said that such failure was not charged in
the petition, and besides, that an operation of that kind
is not within the line of duty of an osteopath, or one
which he is permitted to perform.  However that may
be, the jury did not base the recovery on the failure of
the defendant to sew up the laceration.  After finding
that the defendant had negligently caused the lacera-
tion, the jury were asked:

"If you find that the defendant was negligent in his
treatment of the plaintiff, state in what respects he
was negligent.  State fully.  A. Not making a thorough
examination immediately after delivery of child and
not informing plaintiff or her mother the nature and
extent of her injuries."

Although the laceration was easy of discovery there
is testimony to the effect that defendant did not ascer-
tain that the injury existed for some time, and when

he did make the discovery he remarked that "There was a slight laceration, but it would not amount to anything." It was clearly his duty to make a careful examination and ascertain the nature and extent of the injury, also to inform the plaintiff of her condition and advise her as to the care and treatment necessary to a recovery.

"It is incumbent upon a physician to give such instructions as are proper and necessary to enable the patient or his nurses and attendants to act intelligently in the further treatment of the case,' and a failure to do so is negligence which will render him liable for injury resulting therefrom." (22 A. & E. Encycl. of L. 802.)

The failure to perform this duty was the ground on which the jury rested defendant's liability, and this having been found, the question whether the defendant should have made the repair himself or procured some one else to have done it becomes immaterial. It is said that the law does not permit an osteopath to administer drugs or medicine or perform operations in surgery, and that therefore he could not legally take any steps to repair the laceration. (Gen. Stat. 1909, § 8090.) If an osteopath may lawfully attend an obstetrical case it would seem that such repair might be regarded as a mere incident of the delivery rather than as an operation in surgery. It is not necessary, however, to determine the intention of the legislature in framing the provision and its application to this controversy, as the finding of the jury has eliminated the question from the case.

Complaint is made of instruction five, to the effect that certain things are essential to be done in cases of childbirth for the safety and care of the mother and the child, both during the delivery and the care of the mother and child thereafter. The instruction is general, but inoffensive. It conveyed little information, but it certainly could not have created any prejudice.

There is complaint of instruction number eleven, which is as follows:

"You are instructed that it was the duty of the defendant after undertaking plaintiff's care during confinement and the delivery of her child to use reasonable diligence to inform himself of the nature and extent of any lacerations or injuries which she may have sustained in giving birth to the child; to give proper attention and care to such injuries as is reasonably required in such cases; and to inform her of the nature and extent of her injuries if such information was reasonably necessary in order to enable her or to induce her to take proper action on her part. The defendant can not be heard to charge her with contributory negligence in not having proper attention given to her injuries if the jury believe from the evidence that by the exercise of reasonable diligence he could and should have informed himself of the nature and extent of her injuries and that he negligently left her in ignorance of their extent or seriousness; or that with reasonable opportunity to have such information on his part he encouraged her to believe a surgical operation unnecessary and by reason thereof she was influenced to have nothing done.

"But if the jury believe from the evidence that the defendant did reasonably inform himself of the nature and extent of the plaintiff's alleged injuries and that he did inform her thereof and suggested and advised what should be done for their treatment and the plaintiff failed, neglected and refused to follow his advice, then you would be justified in finding that the plaintiff to that extent by her negligence contributed to her said injury."

The instruction can not be regarded as outside of the issues in the case, and in view of the testimony and of considerations already mentioned it is deemed to constitute a fair statement of the law applicable to that branch of the case.

In another instruction the court advised the jury that expert testimony had been given by physicians and surgeons on some phases of the controversy and that the opinions of those who have had special skill and ex-

perience and have become especially proficient along certain lines are entitled to be considered with other evidence in the case, but they were not conclusive on the jury, adding that:

"They should be considered in connection with all the other testimony and circumstances in the case, and it is your duty to consider all the testimony upon every point, including that of the medical experts."

It is contended that this instruction, although correct as generally applied, does not fit a case of malpractice, as only experts or persons having special skill and training are qualified to testify whether or not a patient has been treated with reasonable skill and care. The instruction does not convey the idea that nonexperts can give opinions on questions of that kind, but that in determining the liability of the defendant the jury are to consider the expert testimony in connection with all of the other testimony in the case. Very much of the testimony which tended to establish the liability of the defendant was not expert in character, and neither kind of testimony should be considered to the exclusion of the other. In *A. T. & S. F. Rld. Co. v. Thul*, 32 Kan. 255, 4 Pac. 352, 49 Am. Rep. 484, it was held that:

"The testimony of experts is to be considered like any other testimony; is to be tried by the same tests, and to receive just as much weight and credit as the jury may deem it entitled to, when viewed in connection with all the other circumstances; and its weight and value are questions for the jury, and not for the court." (Syl. ¶ 3.)

It is insisted that a more definite answer than the jury returned to question one should have been required. The question was:

"State what caused the tear or laceration of the plaintiff? Answer fully. A. Hasty delivery, negligence, and not properly protecting the perineum."

As the purpose of the inquiry was to ascertain

whether any negligent act or omission of the defendant had contributed to the injury, an answer that he was negligent would have been indefinite and insufficient, but the entire answer obviously means that defendant was negligent because of the hasty delivery and in failing to properly protect the perineum. So construed it is reasonably definite, and it conforms to the testimony that such a laceration is liable to follow premature delivery produced by instruments before nature has effected the natural dilation of the parts. There was testimony, too, that defendant had not taken necessary and proper care to avoid tearing the perineum. There is a conflict in the testimony as to the treatment of the plaintiff, and it is earnestly contended that the verdict and findings are not supported by the evidence. An examination of the record satisfies us that the verdict and findings are not without support, and no sufficient reason for setting aside the findings and verdict has been called to our attention.

There is a cross-appeal here in which the plaintiff insists that the court was not warranted in the reduction of the award made by the jury. She contends that since the court expressly found that the amount awarded was not the result of passion and prejudice it was not warranted in setting up its judgment against that of the jury and that the sum which she was coerced to remit should be restored. An approval of the verdict by the trial court was essential to the entry of a judgment, and it could not approve it unless, in its judgment, the testimony warranted it. Evidently the court was satisfied with the findings of the jury to the effect that the defendant was negligent and that by reason of his negligence a liability arose in favor of plaintiff, but it differed with the jury as to the extent of the injury and loss sustained. It concluded that while the jury were not influenced by passion or prejudice the award was, in its judgment, manifestly excessive. Although the assessment of damages is peculiarly within the

province of a jury, and although a verdict should never be disturbed by the trial court merely because its judgment inclines the other way nor unless the verdict is clearly excessive, the court must, nevertheless, approve the award, and in doing so it can not shirk responsibility, but should act on its own judgment. If it is satisfied that the evidence does not sustain the award of damages it should either modify the verdict or set it aside. (*Williams v. Townsend,* 15 Kan. 563; *Richolson v. Freeman,* 56 Kan. 463, 43 Pac. 772; *Railroad Co. v. Matthews,* 58 Kan. 447, 49 Pac. 602.) Where there is an absence of passion or prejudice in the jury, and the trial court determines that the evidence justifies an award but that that made by the jury is excessive, it is within the province of the court to require a party to elect to take judgment for what the court deems to be a proper amount or submit to a new trial. (*U. P. Rly. Co. v. Mitchell,* 56 Kan. 324, 43 Pac. 244; *Railway Co. v. Brandon,* 77 Kan. 612, 95 Pac. 573.) On an appeal to this court where the award of the jury has been approved by the trial court but found to be excessive by this court, and passion or prejudice of the jury does not appear, this court has required the successful party to remit a certain part of the amount awarded, and that failing to do so a new trial would be ordered. (*Mo. Pac. Rly. Co. v. Dwyer,* 36 Kan. 58, 12 Pac. 352; *Telegraph Co. v. Bodkin,* 79 Kan. 792, 101 Pac. 652.) Under the authorities and the facts disclosed in the record the claim of plaintiff for the restoration of the sum remitted must be denied.

The judgment of the district court is affirmed.