## PETELER v. ROBINSON.

No. 4859. Decided December 29, 1932. (17 P. [2d] 244.)
Petition for Rehearing Denied July 21, 1933.

536

*S. P. Armstrong* and *J. M. Hamilton*, both of Salt Lake City, for appellant.

*Hurd & Hurd*, of Salt Lake City, for respondent.

EPHRAIM HANSON, J.

This case went off on a demurrer to the amended complaint. The plaintiff appeals. By the amended complaint it in substance is alleged that the defendant was a physician and surgeon engaged in the practice of his profession and specialized in the treatment of the eye, ear, nose, and throat; that on or about January 16, 1919, the plaintiff, who was "suffering from a slight and incipient sore throat," professionally consulted the defendant, who undertook to treat her and to act for her in the treatment of her ailment; that on January 18, 1919, in pursuance of the employment, the defendant performed a surgical operation on her throat and tonsils, "and cut and tore her said tonsils loose, and removed the same from both sides of her throat," and that in violation of his contract, and in disregard of his duty "and without any fault of plaintiff, negligently failed to exercise

reasonable care, knowledge, prudence, skill and ability in his examination of plaintiff's throat, and in his diagnosis made of her trouble and sore throat, and in prescribing and employing the proper treatment and remedy for her sore throat, and negligently failed to exercise due and reasonable knowledge, skill, ability and prudence in employing such surgical operation, in that he negligently failed to apply well known and proper local treatment, such as medicated lotions, sprays and irrigations as a remedy, and that said surgical operation was not indicated or proper, and was wholly unnecessary in the treatment of plaintiff's sore throat for which defendant treated her, in that plaintiff's said tonsils were not affected with disease," and that it was unnecessary to remove plaintiff's tonsils, and that the defendant failed to exercise reasonable care, skill, and ability "in cutting, lacerating and removing said tonsils, and in not sterilizing the cuts and lacerations, and prescribing and employing proper treatment and remedy," whereby, and by reason of such negligence, plaintiff's throat became "poisoned and infected and inflamed, to such extent that plaintiff's jaws became locked," so that the plaintiff was unable to open her mouth and that defendant was required to "pry her jaws open." It is further alleged that at the defendant's request the plaintiff thereafter visited the defendant at his office for further and continued treatment every day for a week, and thereafter every two or three days for a period of more than one year, or until about the month of December, 1920, at which time, because of the infection created by the negligent treatment of the defendant, the plaintiff's ear became involved and infected, and that the defendant thereupon performed "a surgical operation on plaintiff's left ear, cutting and lancing the inner ear," and at the defendant's request the plaintiff thereafter visited the defendant at his office for treatment every day from thence on until July, 1921, when the defendant performed a surgical operation on plaintiff's other ear, cutting and lancing the inner ear, and that the plaintiff, thereafter at

the defendant's request, visited him at his office for further and continued treatment every day up to and including April, 1926, and since April, 1926, every two or three days up to and including October 22, 1926, after which time the defendant no longer prescribed for or treated the plaintiff.

It is further alleged that the defendant, "without any fault of plaintiff, negligently failed to exercise reasonable care, knowledge, prudence, skill and ability, in treating plaintiff's poisoned and infected throat, and thereby negligently allowed the septic poisons generated in plaintiff's infected throat to be, and the same were absorbed and carried into her body, where they poisoned and infected her nervous system and heart," and that the defendant "negligently failed and omitted to prescribe and employ proper and necessary constitutional treatment and remedy, such as tonics, quinine, stimulants, pure food, fresh air, and sunshine, to build up and support her vitality, and to enable nature to overcome and throw off the septic poisons from her body," and that the only remedy the defendant employed and prescribed was to cauterize her infected throat with silver nitrate. It is further alleged that "the purpose of each and all of plaintiff's said visits to defendant's office since said tonsil operation, was that defendant might endeavor, and have opportunity to repair and lessen the evil effects of his said careless blunder in removing plaintiff's tonsils, and failing to sterilize the cuts and wounds thereby made." It is further alleged that the defendant was not only guilty of negligence in exercising proper skill in diagnosing plaintiff's sore throat and in prescribing treatment therefor, but that he was also guilty of negligence in the treatment of the "septic poisoning and infection," and that "the acts and omissions of defendant aforesaid, from the time of his said negligent operation on plaintiff's tonsils, till October 2, 1926, are a perpetual series of continuing negligence," by reason of which the plaintiff was permanently injured, which injuries were specifically and in detail alleged and described.

The plaintiff further alleged (paragraph 12 of the amended complaint) that the "defendant, with intent to deceive plaintiff, and to induce her to refrain from bringing an action against him for his malpractice, of which he well knew he was guilty, fraudulently concealed from plaintiff the facts as to his negligence, and fraudulently lulled her into the belief that the evil results were the natural sequence of the operation, and defendant baited her along by treatment, painting her poisoned and infected throat with nitrate of silver, and by his promises and representations to her that such treatment would repair and correct her infected throat, induced her to refrain from consulting other physicians from whom she might learn the facts that the poisoning and infection of her throat and consequent septic condition of her nervous system and heart were proximately caused by the negligent and unskillful treatment of defendant. That plaintiff was ignorant of the facts, and believed and relied upon the representations and promises so made to her by said defendant, her physician and surgeon, and was misled thereby. That since October 2, 1926, she first learned and became aware of the fact that the septic condition of her throat was proximately caused by the said negligence of defendant. That thereupon and by reason thereof and of said deceit, defendant is estopped, and ought not to be permitted to say or allege that plaintiff's cause of action is barred by the statute of limitations, and defendant ought to be debarred from relying on said Statute."

To such complaint the defendant demurred upon the grounds:

"1. That said Amended Complaint does not state facts sufficient to constitute a cause of action against said defendant for the reason, among others, that plaintiff's alleged cause of action, if any she ever had, is now and was at the time of the commencement thereof barred by the provisions of section 6474, Compiled Laws of Utah, 1917; and for the further reason, among others, that plaintiff has been guilty of extreme laches in the commencement of said action."

The further stated grounds of the demurrer were that the "amended complaint is uncertain," in that it did not appear and could not be ascertained from the amended complaint how or in what way plaintiff claimed that the defendant was negligent in the performance of the alleged operation of January 18, 1919, or what particular act or acts of omission or commission in the performance thereof constituted the negligence complained of; that the amended complaint further was uncertain, in that it did not appear and could not be ascertained in what way the defendant was negligent in the diagnosis and treatment of plaintiff's throat; and that the amended complaint further was uncertain, ambiguous, and unintelligible, in that it could not be ascertained therefrom whether the plaintiff "will rely, on the trial of said action, upon the alleged negligence of defendant in the performance of said alleged operation of January 18th, 1919, or whether plaintiff will rely upon the alleged negligence of defendant in diagnosing and treating plaintiff's throat."

There also was a motion interposed by the defendant to strike portions of the amended complaint.

Upon argument and a submission of the demurrer, the court "ordered that said demurrer be and the same is hereby sustained on the ground that the action is barred by the Statute of Limitations"; and, the plaintiff having elected to stand on the amended complaint, "it is ordered that said action be, and the same is hereby dismissed."

There is but one question, the statute of limitations. As is seen, the demurrer interposed was not a general demurrer for want of facts to state a cause of action, but was interposed upon the ground of limitations and of uncertainty. Of course, a failure of a complaint to state facts sufficient to constitute a cause of action may be raised at any stage of the proceedings, even for the first time in the appellate court. But the complaint is not so assailed. Still we think the complaint, though faulty, states

a cause of action in general terms. *Yard* v. *Gibbons,* 95 Kan. 802, 149 P. 422. The complaint, though it in some particulars charged the negligence and want of skill only in general terms, yet was sufficient to ward off a general demurrer. *Freedman* v. *Denhalter Bottling Co.,* 54 Utah 513, 182 P. 843. That especially is true here since the facts with respect to the alleged negligence and want of skill were peculiarly within the knowledge of the defendant, indeed more so than within the knowledge of the plaintiff. 4 Bancroft, Code Pleading, 3544. Whether the alleged cause of action on the face of the complaint is barred by the statute of limitations is another and different question. A good cause of action as to substance may be stated in the complaint and yet on the face of the complaint may be barred by the statute of limitations.

No ruling was made on the special demurrer for uncertainty nor on the motion to strike. No cross-assignments are made nor is there any complaint made because the court failed to make rulings on such questions. Thus neither the special demurrer nor the motion to strike is before us for review. As has been seen, the only ruling made and on which the case was put out of court was on the ground of the statute of limitations. We have no special statute, as in some jurisdictions, fixing a period of limitation in whch an acton may be brought for damages occasioned by the alleged negligence or malpractice of a physician or surgeon. In the absence of such a statute, the general rule is that such actions are controlled by the limitations applicable to actions for damages generally. 48 C. J. 1138. It is conceded by both parties that the general statute, Comp. Laws Utah 1917, § 6474, the four-year statute, is applicable, and that the action was required to be commenced within four years after the cause of action occurred. The action was commenced January 24, 1927. It is the contention of the defendant that the cause of action accrued January 18, 1919, when it was alleged the defendant made a negligent and unskillful diagnosis of plain-

tiff's throat, and negligently and unskillfully operated on her throat and removed her tonsils, which resulted in a septic and an infected condition of her throat, causing the injuries complained of, and that the period from such alleged negligent operation until the commencement of the action was about eight years. On the other hand, it is contended by the plaintiff that the defendant in January, 1919, undertook to treat the plaintiff for a throat condition, and while, as alleged, he negligently and unskillfully diagnosed the condition of the throat, and negligently and unskillfully removed her tonsils, he thereafter continued to treat such condition almost daily until December, 1920, and July, 1921, when he negligently and unskillfully performed other operations on her ears which became infected through the septic condition caused by the operation on the tonsils, and thereafter almost daily continued to treat the plaintiff in a negligent and unskillful manner for such septic and infected condition of the throat until October, 1926, when he ceased to prescribe or act for the plaintiff, during all of which time she was his patient for treatment, and that the defendant's treatment from the beginning to the end was a continuous negligent and unskillful treatment resulting in the injuries complained of, a permanent injury to the throat, a destruction of the vocal cords, and a diseased condition of the heart and of plaintiff's nervous system; and that hence plaintiff's cause of action against the defendant did not accrue until she in October, 1926, ceased to be the defendant's patient and the defendant ceased to treat or prescribe or act for her in the treatment of her throat conditions which he had undertaken to treat with ordinary care and skill, but negligently and unskillfully failed to do so. It is further contended by the plaintiff that, because of the averments of paragraph 12 of the amended complaint heretofore referred to, the defendant was estopped from availing himself or relying on the statute of limitations.

The defendant, to support his contention that the action accrued at the time of the operation and removal of the

tonsils, January 18, 1919, chiefly cites and relies on 25 Cyc. 1116; *Sweetser* v. *Fox*, 43 Utah 40, 134 P. 599, 47 L. R. A. (N. S.) 145, Ann. Cas. 1916C, 620; *Coady* v. *Reins*, 1 Mont. 424; *Lotten* v. *O'Brien*, 146 Wis. 258, 131 N. W. 361, 362; *Ogg* v. *Robb*, 181 Iowa 145, 162 N. W. 217, L. R. A. 1918C, 981; *Hahn* v. *Claybrook*, 130 Md. 179, 100 A. 83, 84, L. R. A. 1917C, 1169; *Fadden* v. *Satterlee* (C. C.) 43 F. 568, 569; *Yard* v. *Gibbons*, 95 Kan. 802, 149 P. 422. The general rule stated in Cyc. is that, in cases of neglect of some duty imposed by contract, the cause of action accrues, and the statute begins to run from the time of the breach or neglect, and not from the time when consequential damages result or become ascertained, and that the form of action, whether case or assumpsit, is immaterial. In *Sweetser* v. *Fox* it is held that cause of action arises the moment a cause of action may be maintained to enforce the legal right, so that the statute of limitations then begins to run. These general propositions may be conceded. In *Coady* v. *Reins* the action was to recover damages against a physician for his unskillful "setting and treating" of a fractured and dislocated arm, in which case it was held that the statute began to run "from the time of the alleged negligence," and not from the time when the consequential damages resulted or were ascertained. On reading the opinion, it is not shown what treatment, if any, was rendered after "the bone was set." In *Lotten* v. *O'Brien*, where the complaint charged that the plaintiff employed a physician and surgeon to set and heal a broken arm of the plaintiff, and the defendant "pretended to set said broken arm and continued thereafter to treat and care for the arm," and where it was alleged that the defendant negligently and unskillfully set and attempted to treat the broken arm, the statute of limitations began to run "when the cause of action accrued and this accrued when the negligent acts were committed, without reference to the time of discharge." It was there alleged that the arm was not set al all, that the fractured portions were not brought together, and did not unite and that such was the cause of

plaintiff's damages. In *Hahn* v. *Claybrook* it was charged that the defendant was guilty of negligence in prescribing the use of a drug between the years 1902 and 1910. The statute of limitations was three years. No action was commenced until September, 1915. The court stated the proposition, "When did that injury become apparent, so as to give the plaintiff a right of action, and to then bring a suit?" It was the claim of the plaintiff that she did not discover the discoloration of the skin caused by the use of the drug until 1913, two years before the action was commenced. But the holding of the court was that on the record it was disclosed she discovered the discoloration prior to 1913 and more than three years before the action was commenced, and hence the action was barred. *Fadden* v. *Satterlee* was also an action against physicians for malpractice. The court there observed that "the averments of the petition show that the contract with defendants was made September 1, 1887, and that defendants continued their treatment of him [the plaintiff] until about November 17, 1887. Whatever negligence and want of skill the defendants may have been guilty of in the premises must, of necessity, have taken place on or before November 17, 1887, and this action should have been brought, therefore, before the expiration of two years from that date," the time when the defendants ceased to treat the plaintiff. *Ogg* v. *Robb* was a case where the defendant was charged with negligently treating the plaintiff's arm with an X-ray machine, causing a discoloration of the flesh; that the defendant falsely assured plaintiff that the discoloration was temporary and of no consequence, well knowing that the effects produced by him would develop into a malignant cancer; that the defendant treated the discoloration, and the same disappeared, but a scar remained; that twelve years later, and after the defendant had ceased to treat the plaintiff, the injury developed into a cancer and that until the cancer developed the plaintiff was ignorant of the fraudulent concealment of the defendant. It was held that the petition was demurrable because the

cause of action accrued when the discoloration and injury became known to the plaintiff, and not at the time the cancer developed, and that the discoloration and injury were known to the plaintiff more than three years before she commenced the action. It was further held that the statute of limitations as to actions for damages resulting in injuries to the person commenced to run from the time the injury was done and not from the time the party becomes fully advised of the extent thereof. The court approvingly referred to the case of *Miller* v. *Ryerson*, 22 Ont. Rep. 369, where it was held that, under a statute providing that physicians should not be liable to an action for malpractice unless commenced within one year from the date of the treatment or the professional services, an action against a physician for alleged malpractice was barred within one year from the time the services were rendered, and that the statute of limitations began to run from that time, and not from the time the effects of the treatment developed. In the case of *Yard* v. *Gibbons* it does not appear that the statute of limitations was involved.

In view of the alleged facts of not only a negligent and unskillful operation of plaintiff's throat, but also of an alleged continuing negligent and unskillful treatment of the septic and infected condition of the throat, and of an alleged continued treatment of the throat by the defendant until about four months prior to the commencement of the action, we think the cited cases of the defendant, in the main, do not apply to the extent contended for by the defendant, and that the case in hand is unlike a case where an operation was performed and where the action was not commenced within the statutory period after the last treatment was rendered and where the only negligence alleged was the negligence in the performance of the operation, though the consequential damages were not ascertained within the statutory period. The case, as we think, more properly falls within the rule stated by the New York court in the case of *Sly* v. *Van Lengen*, 120 Misc. 420, 198 N. Y. S. 608, that:

"Where a physician in performing an operation failed to remove a sponge from plaintiff's pelvic cavity, and did not remove it thereafter, though he continued to treat her for more than 2½ years, plaintiff's cause of action was not barred, under Civil Practice Act, § 50, because suit was not brought till more than 2 years after the operation; the tort being continuing, and the period of the statute not beginning to run until the physician ceased his treatments."

### The court said further that:

"If it should appear upon the trial that the injury from which plaintiff is suffering was inflicted at the time of the operation, and was not occasioned in any manner by the subsequent treatment of the plaintiff, nor by any neglect on his part after the operation, a different situation would arise."

### It further was observed by the court that:

"It will be noted that the complaint alleges that the injuries complained of were occasioned, not only because defendant closed the incision without removing the sponge from plaintiff's pelvic cavity, but also because defendant negligently allowed the foreign substance to remain in plaintiff's body from day to day for upwards of 2½ years, while he continued to treat her. * * * According to the complaint the tort was a continuing one."

In principle, to that effect are also the cases of *Harding* v. *Liberty Hospital Corp.*, 177 Cal. 520, 171 P. 98; *Schmit* v. *Esser*, 183 Minn. 354, 236 N. W. 622, 74 A. L. R. 1312, and notes; *Schanil* v. *Branton*, 181 Minn. 381, 232 N. W. 708; *Gerken* v. *Pilmpton*, 62 App. Div. 35, 70 N. Y. S. 793; *Byers* v. *Bacon*, 250 Pa. 564, 95 A. 711; *Ballou* v. *Prescott*, 64 Me. 305; *Williams* v. *Gilman*, 71 Me. 21; *Akridge* v. *Noble*, 114 Ga. 949, 41 S. E. 78.

The case of *Gillette* v. *Tucker*, 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639, is cited by the plaintiff in support of her contention. The case, by a divided court, well supports the contention. By three members of the court, the opinion being written by Mr. Justice Price, the judgment of the court below in favor of the plaintiff was affirmed. It there was held that:

"In an action against a physician and surgeon for malpractice, consisting of negligently leaving a sponge in the abdomen of the plaintiff after performing an operation, where it remained for many months, and until after the relation of patient and surgeon ceased, the statute of limitations does not commence to run in favor of the surgeon until the termination of such relation, because, until that time, it was his constant duty to remove such sponge."

Such members of the court further held that:

"The removal of the sponge was a part of the operation, and in this respect the surgeon left the operation incompleted."

Three members of the court dissented, the dissenting opinion being written by Mr. Justice Davis. But among other things in the dissenting opinion it was said:

"But the ground of this action was not, and could not be, negligence in the after treatment. If leaving the sponge in the body of the patient at the time of the operation was harmless, and injury resulted to the patient only through such negligence in the after treatment, then an action might be grounded on such negligence."

Later the Ohio court, after the personnel of the court had changed, and by a divided court, in the case of *McArthur* v. *Bowers,* 72 Ohio St. 656, 76 N. E. 1128, by a per curiam memorandum opinion, reversed the judgment of the court below, "on the doctrine of the dissenting opinion in *Gillette* v. *Tucker,* 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639." The respondent here thus contends that *Gillette* v. *Tucker* was overruled by the case of *McArthur* v. *Bowers.* What the facts were in the McArthur Case or whether the statute of limitations was there involved are not disclosed by the memorandum opinion. While it is inferable from the memorandum opinion that the case of *Gillette* v. *Tucker* was materially wounded, still it does not appear that it, on the subject of the statute of limitations, was wholly repudiated nor was it expressly overruled. Further, from a reading of the dissenting opinion in the Gillette Case, and giving it full effect, it is doubtful whether the case in hand falls within it, for here it is charged that the defendant, after the

operation removing the tonsils, continued to treat the plaintiff's throat conditions in a negligent and unskillful manner, the very ailment he undertook to treat from the start and continued to treat until about four months before the commencement of the action. We think that fairly appears from the cases reviewed and considered in the dissenting opinion. However, the McArthur Case later by the Ohio court in the case of *Bowers* v. *Santee*, 99 Ohio St. 361, 124 N. E. 238, was disapproved and the doctrine announced in the Gillette Case reaffirmed.

Had we a case where the only negligence alleged was the negligent and unskillful operation in removing the tonsils, and nothing more, let it be assumed that the cause of action accrued at the time of the commission and completion of such operation, and, if an action based on such negligence alone was not commenced within four years thereafter, the bar of the statute would be complete, though the consequential damages or injuries resulting from such negligence were not ascertained or made manifest until after the statute had run. But that is not the alleged cause of action. Here the defendant undertook to treat the plaintiff for a throat affliction. From the time he undertook to treat the case until he ceased to treat it he, as alleged, did so in a negligent and unskillful manner. As alleged, the treatments were not separate and distinct acts, separate and distinct causes of action. They constituted an entire course of treatment of a case undertaken by defendant to be treated by him, and the whole thereof constituted but one cause of action. *Creen* v. *Mich. Cent. R. Co.*, 168 Mich. 104, 133 N. W. 956, Ann. Cas. 1913C, 98 and notes on page 101. From the averments of the complaint, we think it should here be said, as was said in the case of *Sly* v. *Van Lengen*, supra, that the tort was a continuing one, and, where the tort is continuing, the right of action is also continuing, to support which Moak's Underhill on Torts, p. 69, was cited.

Further, under our practice a defendant may demur to a complaint on the ground that the action is barred by the

statute of limitations. *O'Donnell* v. *Parker*, 48 Utah 578, 160 P. 1192. In anticipation of such a demurrer, and in addition to the general allegations of the complaint and in aid thereof, to ward off such a demurrer, the plaintiff set up paragraph 12 of the complaint heretofore referred to. It thus is further contended by the plaintiff that, if on the face of the complaint it be held the alleged cause of action is barred, the facts alleged in paragraph 12 estopped the defendant from availing himself of the bar of the statute. By the defendant it is contended that sufficient facts in such respect are not alleged to work an estoppel. As is seen, the substance of the allegations in such particular is that the defendant, with intent to deceive the plaintiff and to induce her to refrain from bringing an action against him for malpractice, fraudulently concealed from her the facts of his negligence, lulled her into a belief that the evil results were but the natural consequence of the operation, baited her along with treatments, and promised and represented to her that the treatments given by him would repair and correct the infected throat conditions, and thereby induced her to refrain from consulting other physicians from whom she might learn the facts that the impairment and injury to her nervous system and heart conditions were proximately caused by the negligence and unskillful treatment of the defendant; that she was ignorant of such facts, and relied on the promises and representations of the defendant, and was misled by them, and that she did not learn that the septic condition of her throat was due to the defendant's negligence until after October, 1926, when the defendant ceased to treat her throat conditions. It is urged by the defendant that such allegations are mere conclusions of law and not averments of fact, and, further, that on the face of the complaint, as it is argued, the operation removing the tonsils set in motion the cause of the consequential damages complained of, that the plaintiff as a matter of course had full knowledge of the operation and knew of evil consequences flowing therefrom, and, though she may have

been ignorant of the extent of such consequential effect, and though the defendant represented that such effects were but the natural consequences of the operation, yet such ignorance and representations did not prevent the statute from running, in that such representations, in effect, were mere expressions of opinion, constituted a mere denial of negligence and unskillfulness in the operation and of any liability for the evil consequences following the operation.

While this is not an action founded on fraud or one coming within any of the subdivisions of section 6468, Comp. Laws Utah 1917, and while in a proper case fraud and concealment may be alleged to prevent the bar of the statute of limitations, where on the face of the complaint it appears the action otherwise would be barred (17 R. C. L. 1000), still to take the case out of the operation of the statute the facts constituting the fraud and the time of discovery were required to be alleged. In courts of equity it is settled doctrine that a fraudulent concealment of a cause of action will postpone the operation of the statute of limitations until the discovery of the fraud, and by the weight of authority the same rule prevails in actions at law. 37 C. J. 972. As a general rule, it may be stated that, in the absence of a trust or fiduciary relation between the parties, a failure or withholding of known facts or concealing of them by the alleged responsibile party and of which the other party is ignorant, and which go to make up or give a right to a cause of action, is not such a fraudulent concealment of the cause of action as to prevent the running of the statute. It may also be stated that, where the alleged tort or breach is complete and is not continuing, ignorance of the plaintiff as to the extent of the consequential injury or damage until after the statute of limitations had run does not postpone the running of the statute. It also is true where, by fraud of the alleged responsible party, the right of the other party to a cause of action was concealed or the enforcement of his right forestalled or prevented, the acts or facts constituting the fraud must be alleged and the time when the fraud was discovered.

In view of these propositions, how is the case to be regarded on the alleged ground preventing or postponing the running of the statute of limitations? In some particulars, when considered by themselves, it may be said that parts of the alleged fraud are merely in general terms or in the nature of conclusions. In other particulars, what the defendant did, what acts were performed by him, what promises and representations were made by him, upon which the fraud is predicated, are alleged. As already observed, the complaint was not challenged for want of facts. The special demurrer, as has been seen, on the ground of uncertainty, in no particular called in question or challenged the portion of the complaint wherein the estoppel of the defendant was alleged. Further, in such respect the case is not one of an alleged tort or breach where the parties stood on an equality and dealt with each other at arm's length, or where each had equal means of knowledge. The relation of the parties being that of physician and patient, the case is one of trust and confidence imposed in the defendant, and, as to what was to be done and what was being done and as to the manner of treatment, the plaintiff had the right to rely and did rely upon the superior knowledge of the defendant. The necessity, purpose, and good faith of the continued treatments were facts peculiarly within the knowledge of the defendant. While the alleged assurances of the defendant, that the continued treatments would eventually clear up and cure the throat conditions, were in the nature of an opinion, and for that reason not subject as a basis of an action for failure to accomplish such results, still the promises and assurances were pertinent and relevant as bearing on the confidence and reliance placed in the defendant, on the acts and conduct of the plaintiff in submitting to the continued treatments and as to her delay of enforcing whatever right to a cause of action was possessed by her, for, if the defendant by his continued treatments was able to accomplish what he represented and assured he was able to do and the representations believed and relied on by plaintiff, the natural effect of such representa-

tions until the falsity of them was discovered was to cause delay in the enforcement of whatever right was possessed by the plaintiff, and, if made as alleged, to deceive the plaintiff "and to induce her to refrain from bringing an action against him," had the natural tendency to accomplish such result.

As is seen, the case is not one where "fraud" is alleged merely in general terms, or that the defendant through "fraud" or "fraudulently" induced the plaintiff to refrain from bringing an action against the defendant without any accompanying statement of facts upon which the statement of fraud is based. The statement as to such facts may not be so specific and certain as to be beyond criticism, and, though the statement of such facts may be merely defectively and inartifically stated, yet the complaint for such reason is not subject to a general demurrer; and a merely defective statement of an alleged misrepresentation, though subject to a special demurrer or objection, is sufficient as against a general demurred. 3 Bancroft, Code Pleading, 2372. Of course, paragraph 12 of the complaint must be read and considered in connection with the whole complaint. When so considered, we think sufficient accompanying facts are stated with respect to the alleged fraud inducing the plaintiff to refrain from bringing an action against the defendant until after he had ceased to treat the plaintiff, to entitle her to give evidence with respect thereto.

We thus are of the opinion that the court erred in holding that on the face of the complaint the action was barred. The judgment of the court below is therefore reversed, and the case remanded, with directions to reinstate it; costs to appellant.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.