Froessel, J. (dissenting).
On October 10, 1956 infant plaintiff, then 15 months old, was a normal, healthy, active child, able to walk and talk. At approximately 6 o’clock that evening he was scalded by hot coffee, and, after receiving first aid from his family physician, was taken to Kings County Hospital for treatment of the severe second and third degree burns on his neck, chest and right arm. After he was given medication and had his wounds dressed, the infant was removed from the emergency room to a ward room where he was put to bed. His mother was informed that her son “ was fine ” and would “ be home by the weekend
*158 At some point between his admission and 8:00 a.m. the following day, the infant went into shock followed by a condition of anoxia (lack of oxygen in the brain) which resulted in irreversible diffuse cerebral damage. When the infant’s mother visited the hospital that morning, she was told by one of the nurses that her son had almost died. When visiting the child during the next few months she saw that he was in an oxygen tent, and during December, 1956 or the early part of 1957, his parents were informed that their son had suffered severe brain damage.
The infant remained in the hospital for physiotherapy and efforts at rehabilitation until February 14, 1958. The hospital record also contains a notation that the infant “ has been held in hospital for this physiotherapy and general nursing care because it was felt mother would be unable to properly take care of child during her pregnancy ’ ’. While in the hospital, the infant was found to be in convulsions or cyanotic (a bluish discoloration of the skin secondary to anoxia) on April 22, May 5 and November 25, 1957. This latter condition, if not treated properly, results in damage to the brain tissues, but here the child’s brain had already been permanently damaged on October 10-11, 1956, as conceded by defendant, and the subsequent conceded acts of malpractice had no added effect.
As a result, the infant is unable to stand, sit unsupported, speak, or feed himself; in addition, he has been rendered a mental defective, has weakness of the four extremities and serious visual defects, and is subject to frequent seizures involving loss of consciousness. With constant supervision and nursing care the infant could, over a period of time, learn a few simple techniques, i.e., to feed himself with a spoon, make known his toilet needs and respond to language instruction on a very simple level.
The dispositive question on this appeal is whether the notice of claim required to be filed pursuant to section 50-e of the General Municipal Law, as a “ condition precedent to the commencement of an action” against the city, was timely filed. That notice of claim was filed within 90 days of the date of the infant’s discharge from the hospital, but not within 90 days of any act of malpractice. We are thus called upon to decide whether the period within which to file notice commences upon the infant’s discharge from the hospital or upon the last act of malpractice.
*159 At trial, plaintiffs conceded that the “ last act of malpractice ” was on November 25, 1957, and that if the rule is that the time begins to run from that date they are “ out ”. They contend, however, that since there were repeated acts of malpractice and negligence during the course of treatment of the infant, the limitation period does not commence to run until the termination of treatment, i.e., the date of the infant’s discharge from the hospital, in which case their notice was timely.
Although quite doubtful of the validity of plaintiffs’ contentions during the course of the trial, the Trial Judge subsequently concluded that the period within which to file notice of claim commenced on the date the infant was discharged (which he equated with the day a doctor last treats a patient); accordingly, he denied defendant’s motions for a directed verdict and to set aside the verdict. In arriving at his conclusion, the Trial Judge treated the problem as analogous to a situation presenting the question when the Statute of Limitations “ starts to run ” in malpractice cases. His principal reliance upon our decision in Hammer v. Rosen (7 N Y 2d 376) is misplaced, for there malpractice definitely occurred within the limitation period.
The majority of the Appellate Division concluded that the “ injury was sustained, at the latest, on the date of the last act of malpractice, and not on the date when treatment ceased”. Since notice had not been filed within 90 days of that date, the judgment appealed from was reversed on the law and the complaint dismissed. The dissenting Justices agreed with the majority that the notice was served late, but were of the opinion that 11 the city not only waived the late notice, but is estopped from making such a claim ”.
We have repeatedly held that the Statute of Limitations runs from the date that the negligent or wrongful act is committed (Hammer v. Rosen, supra; Golia v. Health Ins. Plan, 7 N Y 2d 931; Ranalli v. Breed, 277 N. Y. 630; Conklin v. Draper, 254 N. Y. 620; see, also, Rokita v. Germaine, 8 A D 2d 620, motion for leave to appeal den. 7 N Y 2d 710; Gross v. Wise, 16 A D 2d 682; Lillich, The Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Corn. L. Q. 339, 340). Applying this rule to the instant case, the notice must be held to have been served late, since it was served more than 90 days after the last act of malpractice.
*160 Our courts have long recognized, however, that a strict application of this rule may lead to an unjust result and, in an attempt to ameliorate its rigors, have engrafted the “ continuous treat-' ment ’ ’ doctrine on to the rule. This doctrine, now a well-recognized rule of law, has been confined in its applicability to cases which factually presented some plausible theory for concluding that the injury complained of was the result of a continued course of treatment, and not merely the result of one or more separate and distinct acts. No such theory is available to plaintiffs in the case at bar.
The instant case is not one in which the malpractice consisted of failing to remove a foreign object from the patient’s body, and thus constituted a continuing wrong so long as the patient remained under the defendant’s care (Ranalli v. Breed, supra; Sly v. Van Lengen, 120 Misc. 420 ; Huysman v. Kirsch, 6 Cal. 2d 302; Gillette v. Tucker, 67 Ohio St. 106); nor is it one in which the defendant failed correctly to diagnose and treat plaintiff’s condition, and throughout their relationship persisted in Ms error (Golia v. Health Ins. Plan, 7 N Y 2d 931, supra; Williams v. Elias, 140 Neb. 656); or where the defendant improperly treated plaintiff throughout a continuous course of treatment for the initial ailment (Hammer v. Rosen, supra; Nervick v. Fine, 190 Misc. 464; De Haan v. Winter, 258 Mich. 293; Schanil v. Branton, 181 Minn. 381; Peteler v. Robinson, 81 Utah 535).
Here the infant was brought into the hospital for treatment of burns, which quickly healed. In the course of that treatment, defendant was negligent in allowing the child to go into shock and sustain irreversible brain damage on the very night of his admission, and that gave rise to an immediate cause of action. The infant’s subsequent stay for the purpose of physiotherapy and rehabilitation can in no sense be deemed continuous treatment for burns, or a continuation of the original wrong or malpractice. The permanent damage had already been done — the doctors were merely trying, in accordance with approved practice, to instruct the infant in a few simple techniques to alleviate in part the result of the serious damage already inflicted.
As to the subsequent malpractice on the three occasions when the infant was found to be in convulsions or cyanotic, nothing was shown to indicate that they were related to the original injury— the burn — or the result of the therapy which the infant was *161 receiving; indeed plaintiffs’ counsel conceded that he was not showing these acts to prove additional damage but merely because “ they’re acts of malpractice so far as the statute is involved. That’s the purpose of offering it.” At best, each incident would have given rise to a new cause of action, and plaintiffs would have had to file the notice within 90 days thereof. This they failed to do. We do not see how we can afford these plaintiffs relief without overturning the established distinctions between cases involving a continuous course of improper treatment and those presenting merely an isolated act or acts.
As to the claim of estoppel, the city did nothing here to mislead plaintiffs other than to retain the notice of claim. That notice based plaintiffs’ action on “continued and consistent negligent and careless treatment * * * from October 10th, 1956 to and including the 14th day of February, 1958 ”, which, if true, would have rendered the service of the notice of claim timely. Such claim, however, was never established at the trial.
We have considered plaintiffs’ contentions with respect to the intermediate orders they seek to have reviewed, and are all agreed that these appeals should be dismissed.
We are not unmindful of the unfortunate consequences of an affirmance in this case, but our prior decisions in this area, as well as our literal interpretation of section 50-e of the General Municipal Law, beginning with Matter of Martin v. School Bd. (301 N. Y. 233), leave us no alternative. By reinstating the verdict the majority here, on this record, are approving the award of substantial damages for an act of negligence committed more than one and one-half years before plaintiffs filed their notice of claim, contrary to our holdings in analogous property damage cases (Meruk v. City of New York, 223 N. Y. 271, 275-276; Thomann v. City of Rochester, 256 N. Y. 165, 170).
The judgment should be affirmed, and the appeals from the intermediate orders dismissed, without costs.
Judges Dye, Fuld, Burke and Foster concur with Chief Judge Desmond ; Judge Froessel dissents in an opinion.in which Judge Yan Voorhis concurs.
Upon appeal from the orders: Appeal dismissed.
Upon appeal from the judgment: Judgment of the Appellate Division reversed and that of the Trial Term reinstated, with costs in this court and in the Appellate Division.