**HOOPER WATER IMPROVEMENT DISTRICT, Plaintiff and Appellant,**

v.

**John O. REEVE, d/b/a John O. Reeve and Associates, Consulting Engineers, Defendant and Respondent.**

**No. 17284.**

Supreme Court of Utah.

March 2, 1982.

---

Donald C. Hughes, Jr., Ogden, for plaintiff and appellant.

LeGrand R. Curtis and Randall N. Skanchy, Salt Lake City, for defendant and respondent.

---

PER CURIAM:

This is an appeal from the dismissal of an action on Motion for Summary Judgment. The complaint alleged negligence on the part of the defendant, Reeve, a consultant engineer, in supervising the construction of a water well, under the terms of a contract that was to be performed "as rapidly as possible."

In support of the Motion for Summary Judgment the defendant filed an affidavit, attaching the contract and stating that the work was commenced in November, 1967, and abandoned in July, 1968. Also attached was a photocopy of a "Report of Well Driller" filed with the State Engineer in August, 1967, showing an abandonment of the project, because of sand content persisting over a 100 hour continuing test; thus confirming the end of the project.

In answer to interrogatories, defendant stated that his relationship under the written contract was as consultant engineer, and under its terms such relationship extended for one year after construction which in this case was on or about July 1, 1969, a year after the Well Driller's Report, which was filed in the State Engineer's Office, showed "Work Completed," July 1, 1968.

The complaint in this case was filed over ten years after the termination of the contract and after defendant's relationship as consultant on the subject project had ended. The complaint specifically referred to such relationship as applied to construction of this particular well, and the allegation in the complaint had no date inserted as to how long the relation of "client-consultant engineer" persisted.

About a month after the complaint was filed, plaintiff's Chairman of the Board, executed and filed a self-serving affidavit saying that plaintiff terminated defendant's service as a retained consultant because of the discovery of problems in the well dug eleven years before in 1967.

It is difficult to discern what kinship the discovery of such problems has with the present lawsuit, when there is no pleading, no affidavit or other specificity in the record as to the nature and extent of the alleged "negligence," which is the essence of this entire litigation. The plaintiff suggests that the allegation of "negligence" alone, without any support other than hope and conjecture, survives a Motion for Summary Judgment, i.e., that mere mention of the tort is sufficient to make synonymous the word "negligence" with the phrase "genuine issue of fact." This conclusion appears to be anathema to the very purpose of the Motion for Summary Judgment process of sifting contention and fact to determine if the latter has any substance.

The question of whether there is an issue of fact is not the touchstone of this case, since this case simply is one of limitation of actions. The whole case is dependent on whether the seven year limitations statute applies (U.C.A., 1953, 78–12–25.5). Said statute bars claims for damage to property caused by any person "performing or furnishing the design, planning, supervision of construction of construction of improvements to real property." Obviously, the statute strikes down the cause of action launched here.

The plaintiff's case on appeal is based on false syllogistic reasoning, since its theme appears to be that because a doctor is a professional man and can be sued for negligence, and a consulting engineer is a professional man and likewise can be sued for negligence, the fact that the first can be sued when the plaintiff discovers a sponge was left in his stomach, the latter can be sued when it is discovered sand was left in his well.

The fallacy at once becomes apparent when Section 78–12–25.5, outlined above, is placed alongside Section 78–14–4, which has to do with commencing actions of malpractice against a "health care provider" within, at most, four years after the patient "should have discovered the injury." Section 78–12–25.5 specifically targets the time when the statute commences to run as being at the "completion of construction,"— not discovery of negligence.

There is no affinity between the two statutes by way of analogy, which is the only

reason advanced to justify recovery, failing which, the trial court's judgment must be and is affirmed with costs to the defendant.

DURHAM, J., does not participate herein.

HOWE, Justice (concurring in the result):

I concur in the result. Plaintiff's main thesis is that we should adopt the "discovery rule" in determining when the statute of limitations started to run on its cause of action. It articulates the "discovery rule" as follows:

> The limitation statute in malpractice cases does not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act.

Plaintiff cites numerous cases where this rule has been applied to the malpractice of engineers, surveyors, insurance agents, inspectors, accountants, attorneys, architects and engineers. As an alternative, plaintiff urges us to adopt the "continuous services exception" where, as in this case, the engineer retains his professional relationship with his client after the occurrence of the negligent act. Plaintiff states that "The theory is that the client continues to repose trust and confidence in the [professional] and is not placed on his guard against misconduct until after the termination of the professional relationship." Under the "continuous services exception" the statute of limitations does not begin to run until the termination of the professional relationship. Plaintiff justifies this exception on the ground that it is an unreasonable burden to demand that the plaintiff hire a second engineer to review the defendant's work while the defendant is still employed as plaintiff's consulting engineer.

As pointed out by the defendant, most of Utah's statutes of limitations do not begin to run until the plaintiff's cause of action "accrues." We have generally interpreted a cause of action to "accrue" only when the plaintiff discovers or should have discovered the injury or damage. See also, *Peteler v. Robinson*, 81 Utah 535, 17 P.2d 244 (1932) where we recognized an exception in medical malpractice cases, which exception is very similar to the "continuous services exception" urged by the plaintiff in this action.

As stated in the main opinion, however, plaintiff's cause of action is barred under the provisions of § 78–12–25.5, U.C.A.1953. This statute was enacted by the legislature in 1967 and is similar to special statutes of limitations enacted in over thirty states according to defendant. Its obvious intent was to protect "persons performing or furnishing the design, planning, supervision of construction or construction" of improvements to real property from indefinite future liability. In that statute the legislature fixed seven years after the completion of construction as the period of limitations.

California has a similar ten year statute of limitations, Code of Civ.Proc., § 337.15. *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 404, 163 Cal.Rptr. 711 (1980). Under these special statutes of limitations actions are barred after the designated period has run irrespective of whether the alleged negligence of the professional has been discovered, or should have been discovered, by that date. In view of that determination made by the legislature, there is no room for us by means of judicial interpretation to hold, as urged by the plaintiff, that the statute of limitations should not run until the negligence of the professional was discovered, or could have been discovered, or until his professional relationship with his client was terminated. Thus cases like *City of Aurora v. Bechtel Corp.*, 599 F.2d 382 (10th Cir. 1979), relied upon by the plaintiff, cannot be followed by us since there the court was construing Colorado's general six year statute of limitations found in § 13–80–110, C.R.S.1973. It held that in an action for professional malpractice against an engineer or architect under that general statute of limitations, the cause of action does not accrue until the plaintiff knows, or should know in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action. We recently indulged in similar judicial license in *Myers v. McDonald*, Utah, 635 P.2d 84 (1981), where we held that the statute of limitations does not begin to run on a wrongful death action until the heirs

possessing the cause of action know or should know by the exercise of diligence, of the death of their relative.

The action of our legislature in fixing a maximum period of exposure to liability in § 78–12–25.5 is similar to its enactment of a special statute of limitations respecting malpractice actions against health care providers. In § 78–14–4, U.C.A.1953, enacted in 1976, it was provided that such malpractice actions must be commenced within two years after the plaintiff discovers, or should discover, his injury but not to exceed four years after the date of the alleged act, omission, neglect or occurrence. We upheld the constitutionality of that statute in *Allen v. Intermountain Health Care, Inc.*, Utah, 635 P.2d 30 (1981).

In conclusion, the legislature by enacting § 78–12–25.5 has foreclosed us from adopting, in cases which come under that section, either the "discovery rule" or the "continuous services exception," despite the very persuasive arguments made and the authorities cited by the plaintiff.